340 So.2d 1194 (1976)
RESNICK DEVELOPERS SOUTH, INC., and Federal Insurance Company, Appellants,
v.
CLERICI, INC., a Florida Corporation, Appellee.
No. 75-1822.
District Court of Appeal of Florida, Fourth District.
December 10, 1976.
Rehearing Denied January 25, 1977.
*1195 R. Martin Perry of Levy, Plisco, Perry, Reiter & Shapiro, Palm Beach, for appellants.
Ronald Sales of Sales & Christiansen, Palm Beach, for appellee.
ALDERMAN, Judge.
This is an appeal from a Summary Final Judgment of the Circuit Court of Palm Beach County.
Briefly stated, the undisputed facts are as follows: Resnick Developers South, Inc., as owner, contracted with William Passalacqua Builders, Inc., as general contractor, for the construction of a condominium. Pursuant to this contract the owner required the general contractor to furnish a payment bond pursuant to Section 713.23, Florida Statutes. In accordance with the contract the owner on October 23, 1972 received a payment bond in the amount of the original contract price, $6,800,000. Subsequently the bond was increased to $7,335,849 to conform with changes in the original contract. The principal on the payment bond was the general contractor, and the surety *1196 was General Insurance Company of America. This bond was in proper form and qualified as a payment bond under the provisions of Section 713.23.
The owner, on October 31, 1972, as provided by Section 713.13, Florida Statutes, recorded in the Public Records of Palm Beach County, and posted at the job site, a Notice of Commencement. The Notice of Commencement properly contained the name and address of the surety on the § 713.23 payment bond, and the amount of such bond. Subsequently, the appellee, Clerici, Inc., under a subcontract with the general contractor performed certain work on the project. Appellee did not receive full payment from the general contractor and on October 16, 1974, filed a claim of lien against the owner's property for an unpaid balance of $36,073.41. Thereafter the owner caused the subcontractor's claim of lien to be transferred from the owner's property to a transfer bond, as provided by Section 713.24, Florida Statutes. The owner was the principal, and appellant, Federal Insurance Company, was the surety on the § 713.24 transfer bond.
The subcontractor filed suit against the owner on November 12, 1974, and in its original complaint sought to foreclose its claim of lien against the real property. Subsequently the parties agreed that the lis pendens ought to be dissolved because the claim of lien had been transferred to a bond. Federal Insurance Company was added as a party defendant and the subcontractor filed an amended complaint seeking to enforce its claim of lien against the § 713.24 transfer bond. Additionally, the subcontractor moved for and was granted leave to further amend its complaint so as to add as a party defendant General Insurance Company of America, the surety on the § 713.23 payment bond. However, the subcontractor did not proceed against General Insurance Company of America or the general contractor, and neither were made defendants in this case.
The trial court in its Final Summary Judgment recognized that the owner was not obligated to give the § 713.24 transfer bond and that the § 713.23 payment bond exempted the owner's property from any mechanic's lien. However the court below held that "once the defendant-owner and its transfer bond surety gave the transfer bond voluntarily, by mistake of its legal rights or otherwise, it became enforceable against them." It was on this basis that the owner and his surety under the § 713.24 transfer bond were held responsible for the remaining balance claimed to be due by appellee under his subcontract with the general contractor.
We reach a contrary conclusion of law and reverse. The owner in this case required and obtained from its general contractor a proper payment bond as provided in § 713.23. The legal effect of this action was to exempt the owner from Part I and II of Chapter 713 and Chapter 85. The only exception to this exemption is the lien of the contractor who furnished the bond. Therefore appellant-owner was exempt from any direct liability to appellee-subcontractor. The claim of lien filed by appellee was improper because, in this case, there was no way that appellee could perfect a valid claim of lien under Chapter 85 or Part I or II of Chapter 713 against the owner's property. The statute sets out the procedure that must be followed by the subcontractor in order to perfect its claim against the § 713.23 payment bond. The subcontractor did not have the option of filing a claim of lien against the owner's property.
Although appellee did not have the legal right to file a claim of lien in this case, it did so anyway. This created a serious problem for the owner because even though the claim of lien was unenforceable against the owner and its property, it created a cloud on the owner's title. Several alternatives were available to the owner if appellee-subcontractor did not voluntarily release its claim of lien. If subcontractor did not bring an action to enforce its claim of lien within the time prescribed by law the owner could rely on the passage of time to remove the cloud of the improperly filed claim of lien. § 713.21(3). If subcontractor attempted to foreclose its claim of lien the *1197 owner could raise its § 713.23 exemption as an affirmative defense. Alternatively an order vacating and cancelling the claim of lien could be obtained from the Circuit Court as provided by § 713.21(4); however, this procedure requires the filing of a complaint and the issuance of a summons to the lienor to show cause within twenty days why its lien should not be enforced by action or vacated and cancelled of record. Unfortunately all of these procedures require time. The only method by which the owner could immediately remove the cloud of an improperly filed claim of lien is to have the claim of lien transferred to security as provided by § 713.23. Such a transfer is not an acknowledgement by the owner that the claim of lien is valid. It is only a substitution of security pending a judicial determination of the validity of the claim of lien.
In the present case appellee improperly filed a claim of lien. It was unenforceable against the owner's property because of the exemption created by the § 713.23 payment bond; however the claim of lien was of record and created a cloud on the title of owner's property. The owner elected to have the claim of lien transfer to a § 713.24 transfer bond. The condition of the § 713.24 transfer bond was to "... well and truly pay any judgment which may become final and not subject to appeal against the subject property for the enforcement of the above described Lien, ..." Clearly this is not an assumption of a new and additional liability on the part of the owner and his surety. The owner has simply substituted the security of the transfer bond in place of its property. If the subcontractor were able to establish that it would have had a valid lien against the property, as might have been the case if there had not been a proper § 713.23 payment bond, then in that event appellee could look to the § 713.24 transfer bond in lieu of the owner's property. However in this case there was a proper § 713.23 payment bond and the subcontractor did not have, nor could it have had, a valid lien against the owner's property. The § 713.24 transfer bond did not give it any additional rights; it simply created an alternate fund from which the appellee's claim of lien could be satisfied, if in fact appellee had a valid claim of lien. In this case appellee did not have a valid claim of lien against the owner's property. Therefore, it was not entitled to look to the § 713.24 transfer bond for payment of its claim.
We hold that the owner in this case was exempt from direct liability by virtue of the § 713.23 payment bond, and that it had the right to utilize the § 713.24 transfer bond to remove the encumbrance of appellee's improperly filed claim of lien. We further hold that the exercise of this right by owner did not waive its exemption or create a new direct liability on the part of the owner and its surety to pay the amount due to appellee under its subcontract with the general contractor.
Appellee seeks support for its position from certain language used by this court in Schleifer v. All-Shores Construction and Supply Co., 260 So.2d 270 (Fla. 4th DCA 1972). Consistent with our holding in the present case, in Schleifer we held that the securing of a § 713.23 payment bond exempted the property owner and his property for direct liability. The suit had been brought by a sub-subcontractor against the property owner to foreclose a claimed mechanic's lien or, alternatively, for money damages. We reversed a money judgment which had been entered against the owner. The general contractor had filed a § 713.24 transfer bond; however, neither the general contractor or its surety were parties to the suit. The following language appeared in Schleifer, at page 272: "... upon the filing in the clerk's office of the bond, pursuant to F.S. § 713.24, F.S.A., the lien was effectively removed from the property, and the sole remedy was upon the bond." (Emphasis supplied.) The above quoted language from Schleifer is dicta and was not the holding of the Court in that case. Nevertheless, to avoid confusion and to remove any suggestion of conflict with our holding in the present case, we hereby recede from the above quoted language.
*1198 Appellants have also presented the question of whether the lower court erred in failing to grant their motions for summary final judgment on the basis that the § 713.23 payment bond exempted the owner and its property from appellee's claim of lien. There being no genuine issues of material facts on this issue, we conclude that appellants were entitled to summary final judgment in their favor.
REVERSED and REMANDED with instructions that the summary final judgment entered in favor of the appellee be vacated and that summary final judgment be entered in favor of the appellants.
SMITH, ROBERT P., Jr., and COBB, WARREN H., Associate Judges, concur.