390 So.2d 734 (1980)
BANKERS & SHIPPERS INSURANCE COMPANY OF NEW YORK, Appellant,
v.
AIA INSULATION INDUSTRIES, INC., Inland Construction Co. of Fla., Inc., Hamilton Electric, Inc., Family Finance Realty Corp., S.I. Goldman Mechanical Contractor, Inc., Grinnell Fire Protection Systems Co., Inc., Meekins-Bamman Prestress, Inc., Aristar Realty, Inc., Etc., et al., Appellees.
ARISTAR REALTY, INC., Appellant,
v.
AIA INSULATION INDUSTRIES, INC., Inland Construction Co. of Fla., Inc., Hamilton Electric, Inc., Family Finance Realty Corp., S.I. Goldman Mechanical Contractor, Inc., Grinnell Fire Protection Systems Co., Inc., and Meekins-Bamman Prestress, Inc., a Florida Corporation, Appellees.
SAFECO INSURANCE COMPANY OF AMERICA, Appellant,
v.
AIA INSULATION INDUSTRIES, INC., Inland Construction Co. of Fla., Inc., Hamilton Electric, Inc., Family Finance Realty Corp., S.I. Goldman Mechanical Contractor, Inc., Grinnell Fire Protection Systems Co., Inc., Meekins-Bamman Prestress, Inc., and Aristar Realty, Inc., Appellees.
Nos. 78-841, 78-1024 and 78-1025.
District Court of Appeal of Florida, Fourth District.
September 24, 1980.
Rehearing Denied; Opinion Modified and Clarified December 17, 1980.
*736 Dan B. Guernsey of Welbaum, Zook, Jones & Williams, Miami, for appellant-Bankers & Shippers.
Don R. Livingstone, South Miami, for appellants-Aristar Realty and Safeco Insurance Co.
Jonathan D. Commander, Palm Beach, and Michael J. Fingar, North Miami Beach, for appellee-AIA Insulation Industries, Inc.
James Nemec, West Palm Beach, for appellee-Hamilton Electric.
Ralph R. Quillian, Hollywood, for appellee-Meekins-Bamman Prestress, Inc.
DOWNEY, Judge.
These consolidated cases involve plenary appeals from a final judgment dated March 15, 1978, determining the main issues between the parties and a supplemental final judgment dated May 8, 1978, determining ancillary issues involving interest, costs and attorneys' fees.
For purposes of this opinion the pertinent facts are that Aristar Realty Inc. (hereafter referred to as Aristar), as owner, entered into a contract with Inland Construction Company of Florida, Inc. (hereafter referred to as Inland), as general contractor, for the construction of a warehouse in Riviera Beach, Florida, for $803,442.00. Inland entered into subcontracts with AIA Insulation Industries, Inc., (hereafter referred to as AIA), Hamilton Electric, Inc., (hereafter referred to as Hamilton), Meekins-Bamman Prestress, Inc., (hereafter referred to as Meekins), Grinnell Fire Protection Systems Company (hereafter referred to as Grinnell), and S.I. Goldman Mechanical Contractor, Inc. (hereafter referred to as Goldman). Pursuant to the prime contract Inland furnished a Payment Bond provided for in Section 713.23, Florida Statutes (1971), with Bankers & Shippers' Insurance Company of New York (hereafter referred to as Bankers) as surety. During the course of the construction problems developed concerning the roof. When the construction was ostensibly concluded Aristar refused to pay Inland the balance of $130,776.20 due on the contract, contending that Inland had breached the prime contract in certain particulars, the principal one being the roof.
In due course appellees, AIA, Hamilton, Meekins, Goldman, and Grinnell filed suit to foreclose liens and/or for breach of contract. Aristar had the mechanics liens transferred to a Section 713.24 bond with Safeco Insurance Company of America (hereafter referred to as Safeco) as surety. Aristar also claimed substantial damages against Bankers for Inland's various breaches of the prime contract.
The five suits filed by the subcontractors were consolidated for trial and resulted in an extensive final judgment, dated March 15, 1978, wherein the court found in pertinent part:
1. That Aristar and Inland had entered into the prime contract; Inland had contracted with the five subcontractors; Inland had furnished a payment bond written by Bankers;
2. Grinnell had obtained a judgment against Inland which had previously been paid by Bankers;
3. AIA, Hamilton, Meekins and Goldman were each entitled to a judgment for specific amounts payable out of the $130,776.20 retainage held by Aristar.
4. Aristar, to the extent possible, should also pay to AIA, Hamilton, Meekins and Goldman from the retainage all of their "allowed" interest, costs and attorneys' fees.
5. In the event the fund held by Aristar was consumed prior to paying the aforesaid interest, costs and attorneys' fees, any balance due should be paid by Bankers.
6. The balance of the sum of $130,776.20 held by Aristar after paying the aforesaid sums therefrom was to be retained by Aristar on account of the damages Aristar sustained as a result of Inland's breaches of the contract.

*737 7. Aristar was entitled to recover the sum of $96,534.90 against Inland and Bankers, together with interest, costs and attorneys' fees, less any balance of the retainage held by Aristar.
Three separate appeals have been filed from the final judgments entered below and they have been consolidated in this court. The appellants in said cases are Bankers, Aristar and Safeco.

BANKERS' APPEAL-Case No. 78-841
Bankers' first point suggests that the trial court erred in granting Goldman a judgment against Bankers because 1) there was no evidence adduced at trial to prove Goldman's claim and 2) Goldman's suit against Bankers was untimely in view of the one year limitation contained in Section 713.23, Florida Statutes (1973).[1]
Bankers contends that Goldman did not participate in the trial and thus its claim was not proven. Aristar attempts to rebut this contention by pointing to the record where Goldman sued Inland and Aristar and obtained summary final judgment against both these defendants for $2,270.60. In view of Goldman's claim, Aristar filed a third party complaint against Bankers, alleging Bankers was liable on its bond to pay all subcontractors including Goldman. Bankers' answer admitted the demands made against it for payment. Thus, it appears to us that Bankers was liable for the amount of the Goldman judgment which was contained in this record.
The other aspect of this point raised by Bankers is that Goldman's first complaint against Bankers was filed in October 1977, although Goldman last furnished materials in August 1973. Section 713.23, Florida Statutes (1973), requires that suit on a payment bond be instituted or prosecuted within one year after the last delivery of materials. Bankers claims that, although Goldman sued Aristar and Inland in 1974, Goldman did not name Bankers as a party until 1977, long after the one year limitation period had expired. However, as Aristar correctly points out, the statutory language specifically provides that a suit must be instituted within one year "against the contractor or surety". Goldman's suit against Inland was commenced well within one year from the last delivery of materials and thus the action against Bankers was timely, within the meaning of Section 713.23, supra. Therefore, we find no merit in Bankers' first point.
In the second point, Bankers contends the judgment in favor of Aristar and against Inland and Bankers for damages for "contractor's overcharge on Sprinkler System" was erroneous. This phase of the problem arose out of a contract provision relating to sprinkler system installation. The contract provided a maximum allowance of $90,000 for the sprinkler system; however, if the system was installed for less, the owner was to be credited with the difference. The final judgment allows Aristar a credit of $12,890.60. This figure ostensibly represents the approximate difference between the contract allowance and the cost of installation. Grinnell furnished the sprinkler system and, when payment was not forthcoming, it filed a claim of lien for $77,209.80. It is suggested that the trial court arrived at the $12,890.60 by deducting the sum of $77,209.40, shown in Grinnell's claim of lien, from the contract allowance of $90,000. Bankers contends that there is no competent evidence in the record to prove the amount of any credit due Aristar. The record is clear the claims of lien were admitted into evidence for the limited purpose of showing that the claim had been recorded, not to prove the truth of the matters contained therein. Aristar refers in its brief to various other exhibits which prove the item in question. After laboriously combing the twenty-four volume record we are unable to find adequate evidentiary support for the trial court's award of this item of damages.
*738 Bankers' third point is that it was error to award Aristar a judgment against Inland and Bankers for the amount of $49,500 as liquidated damages. The contract provided the contractor would pay $500 per day as liquidated damages for each day the work remained uncompleted after the stipulated time for completion. The proof showed the contract completion date was March 15, 1973, but the date of beneficial occupancy was September 4, 1973. Bankers contends that Aristar waived that claim because throughout the negotiations and the litigation Aristar never asserted any claim for liquidated damages. In response, Aristar argues that it cannot be charged with waiver simply because it tried to get the matter amicably concluded. We agree. The contract clearly provided for liquidated damages and the evidence shows Aristar is entitled to damages therefor. Thus we find no error in the judgment allowing this item of damages.
The final point in Bankers' appeal is that the amount of attorneys' fees award to AIA, Hamilton and Meekins is erroneous because Section 627.756(2), Florida Statutes (1977), limits attorneys' fees in a suit on a payment bond to a maximum of 12 1/2%. Said section provides:
(2) Section 627.428 (attorney fee) shall also apply as to suits brought by owners, subcontractors, laborers and material men against a surety insurer under payment or performance bonds written by the insurer under the Laws of Florida to indemnify such owners, subcontractors, laborers and material men against pecuniary loss by breach of a building or construction contract; except, that the amount to be so recovered for fees or compensation of such a plaintiff's attorney shall not be more than 12.5 percent of the amount which the judgment or decree awards such plaintiff under the bond (exclusive of the costs of suit and attorney fees or compensation), nor shall it be less than $100 where the judgment or decree is for more than $500 nor less than $50 where the judgment or decree is $500 or less. Such owners, subcontractors, laborers and material men shall be deemed to be "insureds" or "beneficiaries" for the purposes of this section.
The appellees, on the other hand, contend the allowance of attorneys' fees is controlled by Section 713.29, Florida Statutes (1977), which provides:
Attorney's fees.-In any action brought to enforce a lien under part I of this chapter, the prevailing party shall be entitled to recover a reasonable fee for the services of his attorney, to be determined by the court, which shall be taxed as part of his costs.
It would seem that, if the awards to the subcontractors resulted from the perfection and enforcement of mechanics liens, Section 713.29 should apply and the award of attorneys' fees was proper. On the other hand, if the awards to the subcontractors arise out of a claim against the payment bond, the attorneys' fee would be controlled by Section 627.756(2), Florida Statutes (1977). As we will demonstrate later in this opinion, the subcontractors' claims were properly against the bond rather than the foreclosure of liens against the owner and the property. Resnick Developers South, Inc. v. Clerici, Inc., 340 So.2d 1194 (Fla. 4th DCA 1976). Section 713.29 provides for a reasonable attorney's fee "in any action brought to enforce a lien under Part I" of Chapter 713. Resnick, supra, held that the legal effect of furnishing a payment bond pursuant to 713.23 is to exempt the owner and the property from the provisions of Part I. The lien claimants cause of action is upon the bond rather than to enforce a lien under Part I. Thus, Section 627.756(2) should control the attorney's fees. Therefore, we find it is error to award attorneys' fees under Section 713.29, Florida Statutes (1977).
Several cases which have treated the dichotomy between Sections 713.29 and 627.756(2) have held that in a case like the one at bar Section 713.29 applies and reasonable attorneys' fees are allowable with no statutory maximum. Midway Shopping Mall, Inc. v. Corky Corp., 257 So.2d 905 (Fla. 3d DCA 1972) and Travelers Indemnity Company *739 v. Howell & King Inc., 336 So.2d 1 (Fla. 4th DCA 1976), cert. denied 341 So.2d 1036 (Fla. 1976). In Snead Construction Corp. v. Langerman, 369 So.2d 591 (Fla. 1st DCA 1978), the First District Court of Appeal held Section 627.756(2) applied to the recovery of attorney fees on a payment bond. On the record in this case it seems to us that Section 627.756(2) should control the allowance of attorneys' fees because we have expressly held that the claims here are on the payment bond as opposed to a straight foreclosure of a mechanics lien. To the extent this holding conflicts with Howell & King Inc., supra, we recede from the decision which is contrary to our holding herein.

ARISTAR APPEAL-Case No. 78-1024
Aristar suggests that the final judgment is erroneous in two respects:
a) In impressing lien rights in favor of the subcontractors on the unpaid balance of the contract price (in Aristar's hands) when there was in full force and effect a Section 713.23 payment bond, the subcontractors' mechanics liens were unperfected and owners' cost of completion exceeded the amount due on the contract.
b) In refusing to award Aristar the full amount of its damages against Bankers, the payment bond surety.
In order to determine whether there is any validity to Aristar's first contention it is necessary to focus on the purpose and effect of a payment bond authorized by Section 713.23, Florida Statutes (1971). The statute authorizes an owner to require a contractor to furnish a payment bond conditioned that the contractor shall promptly pay all lienors under the contractor's direct contract. The legal effect of this bond is to exempt the owner from Part I and Part II of Chapter 713 and Chapter 85 of the Florida Statutes. Upon the furnishing of a proper payment bond under the section in question no subcontractors, mechanics or materialmen (except the prime contractor) have any further claim against the owner or his property. As this court said in Resnick Developers South, Inc., supra:
The owner in this case required and obtained from its general contractor a proper payment bond as provided in § 713.23. The legal effect of this action was to exempt the owner from Part I and II of Chapter 713 and Chapter 85. The only exception to this exemption is the lien of the contractor who furnished the bond. Therefore appellant-owner was exempt from any direct liability to appellee-subcontractor. The claim of lien filed by appellee was improper because, in this case, there was no way that appellee could perfect a valid claim of lien under Chapter 85 or Part I or II of Chapter 713 against the owner's property. The statute sets out the procedure that must be followed by the subcontractor in order to perfect its claim against the § 713.23 payment bond. The subcontractor did not have the option of filing a claim of lien against the owner's property. 340 So.2d at 1196.
see also: Goldberger v. United Plumbing & Heating Inc., 358 So.2d 860 (Fla. 4th DCA 1978); Alpha Electric Supply, Inc. v. F. Feaster, Inc., 358 So.2d 892 (Fla. 2d DCA 1978).
Since the prime contractor, Inland, had furnished a proper payment and performance bond at the commencement of this job, subcontractors were not entitled to enforce mechanics liens against Aristar or the real property involved. If they were not paid by Inland, their remedy was a direct action against Bankers on the payment bond. § 713.23, Fla. Stat. (1971). A suit by anyone (other than Inland as prime contractor) to foreclose a lien was subject to being defeated by an affirmative defense asserting the existence of a proper payment bond. Accordingly, the trial court should have made the awards to the subcontractors Hamilton, Meekins, and AIA a judgment against Bankers rather than against Aristar. This, of course, is not to say that the contract retainage of $130,776.20 held by Aristar becomes a windfall for Aristar. On the contrary, the entitlement to that fund is one of the issues which must be decided *740 between Aristar and Bankers. If Aristar had no claim against Bankers for Inland's alleged default under the prime contract, then the money would all be due to either Inland or Bankers. However, Aristar does have substantial claims against Bankers which will resolve the question of who gets credit for said fund. This brings us to Aristar's second point.
The damages which Aristar alleges it suffered due to Inland's breach of the prime contract are:
The cost to complete the contract per plans and specifications
Liquidated damages
Test lab reports
Punch list items
Roof
Architectural services
Furniture damage
Contractor's overcharge on sprinkler system
Transfer bond premium
Loss of rent
The trial court allowed damages for all of those items except the transfer bond premium and the loss of rent. The amount allowed for the cost of completion of the roof was only $25,000, whereas Aristar claimed the reasonable cost of completion was $101,031.
It appears to us that at the time the liens were transferred to bond Aristar had a right to make the transfer, Resnick, supra, and thus the bond premium was recoverable against Inland and Bankers. However, today if a Section 713.23 bond is in existence the transfer is made to the payment bond by simply recording a notice of bond as provided in Section 713.23(2), Florida Statutes (1979). It would be unnecessary to obtain a new bond provided for in Section 713.24.[2]
It is argued that the loss of rent which Aristar claimed it sustained by virtue of the unsatisfactory roof is covered by the indemnification provision of the prime contract. We disagree and hold that the loss of use referred to in Section 4.181 of the prime contract does not include the item of damage claimed here. The contractual language providing for indemnification where a "loss of use" occurs (for purposes of this case) is restricted to those instances where the damage is attributable to loss of use of tangible property (other than the work itself) due to injury or destruction caused by the contractor, subcontractor or an employee of either of them.
Aristar's cost of completion claim is more difficult. As owner, Aristar was obligated to pay the contract price to the prime contractor, Inland. The "contract price" is defined in Section 713.01(3), Florida Statutes (1971). Paraphrased, it is the amount agreed upon in the prime contract, plus or minus extras or change orders or defects in the workmanship or materials or any other breaches of the contract. In this case the plans and specifications called for a particular kind of roof. The roof as built did not conform to the plans and specifications, it had substantial defects. After a long period of negotiating the architect approved a replacement roof to conform to the plans and specifications and the roof was replaced. The reasonable cost of replacing the roof was $101,031. As we read the record, that is the proper allowance for bringing the roof into compliance with the plans and specifications rather than the $25,000 allowed by the trial court. Bryan v. Owsley Lumber Co., 201 So.2d 246 (Fla. 1967).

SAFECO'S APPEAL-Case No. 78-1025
The final judgment makes no award against Safeco, but neither does it expressly exonerate Safeco. However, the law appears to be quite settled that the principal and surety on a Section 713.24 transfer bond are not liable thereon where there is a proper Section 713.23 payment bond in existence. Edward L. Nezelek, Inc. v. Concreform Co., 351 So.2d 1046 (Fla. 4th DCA 1977). Resnick Developers South, Inc., supra; Alpha Electric Supply Inc., supra. Thus, it would appear appropriate upon remand *741 to provide that the parties take nothing from Safeco as a result of the 713.24 transfer bond.
In view of the foregoing the judgments appealed from are reversed and the cause is remanded with directions to the trial court to:
a) Vacate the award in favor of Aristar for $12,890 representing the difference between Grinnell's cost of installation and the contract allowance for the sprinkler system.
b) Vacate the award of attorneys' fees to AIA, Hamilton, Meekins and Goldman and reconsider the allowance of attorneys' fees to said subcontractors applying Section 627.756(2), Florida Statutes (1977).
c) Vacate the provisions of the two judgments appealed from wherein they provide for a lien on the $130,776.20 fund held by Aristar.
d) Enter judgment for AIA, Hamilton, Meekins and Goldman against Bankers for the principal sums found due in the judgment of March 15, 1978, together with attorneys' fees, interest and costs.
e) Award Aristar damages against Bankers in the sum of $36,670.70, which represents the damages awarded Aristar in ¶ 11 of the judgment of March 15, 1978, plus the sum of $76,031.00 additional allowance for the roof, plus $7,771 for transfer bond premium, less $12,890 improperly allowed for the sprinkler system and less the sum of $130,776.20 contract retainage held by Aristar.
f) Enter judgment in favor of Safeco on its 713.24 bond.
REVERSED AND REMANDED with directions.
ANSTEAD and HERSEY, JJ., concur.

ON PETITION FOR REHEARING AND MOTION FOR CLARIFICATION
PER CURIAM.
Petitioner/appellant Bankers & Shippers Insurance Company of New York has filed a petition for rehearing, in which, among other things, it is alleged that the opinion of this court upholding judgment in favor of S.I. Goldman Mechanical Contractor Inc. is erroneous because we misinterpreted the statutory language relating to the statute of limitations contained in Section 713.23, Florida Statutes (1973).
Upon further consideration of Section 713.23, we concede the petitioner's contention and hold that the institution of suit by Goldman against Inland and Aristar in 1974 was not a suit against the contractor or surety on the bond and thus did not toll the running of the one year statute of limitations. The section in question deals exclusively with payment bonds. Thus, it is implicit in the statute that a suit against the contractor or surety within the statutory one year period must be a suit on the payment bond. Our review of the record demonstrates that S.I. Goldman's complaint, filed February 4, 1974, was in two counts, 1) to foreclose a mechanics lien and 2) for quantum meruit. The third party complaint, filed May 19, 1975, against Bankers & Shippers (more than one year from the date Goldman last furnished labor and materials) for the first time made a claim on the payment bond. Thus, the claim was untimely under the statute of limitations contained in Section 713.23, Florida Statutes (1973). Bankers & Shippers' answer to the amended Third Party Complaint raised the statute of limitations as an affirmative defense. Accordingly, we find merit in Bankers' first point on appeal and modify our previous opinion by reversing that part of the final judgment awarding judgment to S.I. Goldman Contractor Inc. against Bankers.
In all other respects the Bankers & Shippers' petition for rehearing is denied.
With regard to the motion for clarification,
(a) Aristar's right to recover attorney's fees and costs in the trial court was determined in the final judgment and not appealed. *742 Thus, that part of the judgment became final and is not disturbed on this appeal.
(b) The net amount awarded to Aristar by our opinions in this case is the sum to be used by the trial court in fixing the amount of attorney's fees due Aristar for the trial court proceedings.
(c) We previously awarded Aristar attorney's fees for the appellate proceedings by order of September 24, 1980. The amount of those fees likewise should be determined based upon the net award to Aristar as found in our opinions in this case.
We adhere to our opinion of September 24, 1980, as so modified and clarified.
DOWNEY, ANSTEAD and HERSEY, JJ., concur.
NOTES
[1] Section 713.23, Florida Statutes (1973), provides in pertinent part: "No action or suit shall be instituted or prosecuted against the contractor or against the surety on the bond required in this section after one year from the performance of the labor or completion of delivery of the materials and supplies."
[2] The time frame involved in Resnick, supra, and this case predates the 1977 amendment to 713.23 allowing transfer of liens to a payment bond.