804 So.2d 433 (2001)
William Chester NETHERLY, Appellant,
v.
STATE of Florida, Appellee.
Myrtle A. Netherly, Appellant,
v.
State of Florida, Appellee.
Nos. 2D99-4947, 2D99-4949.
District Court of Appeal of Florida, Second District.
October 19, 2001.
Rehearing Denied December 13, 2001.
*434 John E. Swisher, St. Petersburg, for Appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
In these consolidated appeals, William and Myrtle Netherly challenge their convictions and sentences for several felonies, all of which involve the theft or misapplication of construction funds. We reverse Mr. Netherly's convictions on counts 1, 2, 14, and 15 and Mrs. Netherly's convictions on counts 2 and 15.

Background
Mr. Netherly, a licensed builder, incorporated Premiere Homes in 1988. He and Mrs. Netherly were the sole corporate officers and held equal interests in the corporation. Between May 1990 and August 1992, the Netherlys entered into contracts to build homes for each of the victims in this case. The Netherlys were paid on each building contract but failed to complete several of the homes. And, those homes which were completed were encumbered by claims of lien filed by suppliers and subcontractors whom the Netherlys had failed to pay.
The State's evidence established that the Netherlys took substantial officer loans from the corporation and used corporate funds to pay personal expenses, such as their home mortgage and utility bills. Between January 1990 and September 1992, the Netherlys took $422,528.84 out of the corporation, $244,000 of which represented their combined salary, and $178,528.84 of which represented officer loans. Kevin Krueger, the accountant for Premiere, testified that activity in Premiere's officer loan account increased substantially between January and July 1992, causing him great concern. Based on this activity, Krueger believed that the Netherlys had borrowed more than the corporation was capable of producing and "someone [was] going to get shorted somewhere." The Netherlys' customers ultimately bore the brunt of Premiere's financial shortfall.
In 1992, as Premiere consistently defaulted on payments to materialmen and subcontractors, homeowners began receiving notices of nonpayment and claims of lien. The Netherlys told them to ignore the notices and liens and assured them that all accounts had been, or eventually would be, paid in full. The Netherlys were unable to make good on these assurances. The record demonstrates that they systematically drained all of Premiere's working capital and adopted some rather nefarious business practices in order to *435 conceal the company's ailing financial status. For example, in order to receive final bank draws on completed homes, Mr. Netherly executed false affidavits stating that all suppliers and subcontractors had been paid in full. And, when subcontractors confronted Mr. Netherly demanding payment, he "negotiated" with them to allow him to make partial payment on the condition that they sign waivers of lien stating that they had been paid in full. On one occasion, Mrs. Netherly altered office computer records to reflect a balanced account when a homeowner arrived at Premiere's office demanding to see documentation that his account was current. Perhaps the most egregious misdeed was suffered by Anthony and Joanne DiGiorgio, the victims in count 1.
The DiGiorgios paid Premiere a deposit of $120,000 for the purchase of their lot and the construction of their home. Prior to initiating construction, Mr. Netherly suggested that the DiGiorgios obtain a construction loan. The DiGiorgios refused. Shortly before their closing, Mr. Netherly informed the DiGiorgios that he did not have the money to close on their home. When Mrs. DiGiorgio asked why, she learned that Mr. Netherly had secretly obtained a $137,000 construction loan on the home. Mr. Netherly found it necessary to obtain this unauthorized loan because he had used the DiGiorgios' $120,000 deposit to finance other projects and to upgrade his office. Mr. Netherly later gave the DiGiorgios a promissory note to secure the loan. The DiGiorgios were also given proceeds from the sale of Premiere's model homes. However, these proceeds were insufficient to fully satisfy the note, and the Netherlys eventually defaulted.
Premiere's imminent financial ruin became apparent in 1992, and the Netherlys were abandoned by suppliers and subcontractors. Even lenders became wary and stopped issuing draws for homes still under construction. In October 1992, the Netherlys closed their business and relocated to Nashville, Tennessee, severing contact with homeowners and creditors without explanation. They made no arrangements to make payments on outstanding debts, nor did they arrange for other builders to take over pending projects. The Netherlys left homes unfinished, accounts unpaid, and in one instance, failed to initiate construction after accepting a $9,650 down payment.

Procedural History
The State's first information charged the Netherlys with six counts of grand theft, eight counts of misapplication of construction funds, and eight counts of perjury. The information was filed on September 12, 1995, and the Netherlys were placed under arrest shortly thereafter. Mrs. Netherly was taken into custody at her place of employment in Tennessee on September 18, 1995, and Mr. Netherly turned himself in to Pasco County authorities on September 29, 1995.
An amended and a second amended information were subsequently filed. The second amended information charged one count of second-degree and six counts of third-degree grand theft, two counts of second-degree and nine counts of third-degree misapplication of construction funds, and nine counts of perjury. The trial court granted, in part, the Netherlys' motion to dismiss the second amended information, dismissing all nine counts of perjury. This court subsequently granted, in part, the Netherlys' emergency motion for writ of prohibition, quashing the trial court's order denying the Netherlys' motion to dismiss count 1 of the second amended information (second-degree grand theft as to the DiGiorgios). Netherly v. State, 710 So.2d 561 (Fla. 2d DCA 1997). The State later filed third and *436 fourth amended informations. The third amended information added the new substantive offense of a scheme to defraud the DiGiorgios of $50,000 or more.
Ultimately, the Netherlys were tried on the State's fourth amended information which charged: one count of first-degree scheming to defraud (count 1); two counts of second-degree and nine counts of third-degree misapplication of construction funds (counts 2, 3, and 10-18, respectively); and six counts of third-degree theft (counts 4-9), each count representing a separate victim. The jury found Mr. Netherly guilty of counts 1 and 2, 4, 7-16, and 18, and Mrs. Netherly guilty of counts 2, 4, 7-10, 12 and 13, 15, 16, and 18.
The Netherlys advance several arguments on appeal. We consider each of them in turn.

The Statute of Limitations
For purposes of computing the limitations period, the trial court determined that the crime was complete, and the statute began to run on the scheming to defraud count when Premiere closed for business, and the Netherlys left Florida without giving the victims notice or arranging to make payments on promissory notes and subcontractor accounts. Premiere closed for business on October 5, 1992. Based on this closing date and victims' testimony indicating that they were unable to locate the Netherlys after October 1, 1992, the trial court concluded the statute began running on this offense in October 1992. There is competent, substantial evidence in the record to support this conclusion.
Mr. Netherly moved to dismiss count 1 (scheming to defraud), arguing that the statute of limitations had run on the offense. The trial court denied the motion after finding that the statute of limitations was tolled during his absence from the state.[1]
The statute of limitations for first-degree scheming to defraud is four years. §§ 775.15(2)(a), 817.034(4), Fla. Stat. (1991). As mentioned earlier, Mr. Netherly was originally charged with this offense in count 2 of the third amended information which was filed on January 27, 1998. Therefore, if the third amended information was timely, the scheming to defraud charge alleged in the fourth amended information would relate back. Bongiorno v. State, 523 So.2d 644 (Fla. 2d DCA 1988). Based on the date adopted by the trial court, the offense was initially filed more than sixteen months after the statute of limitations expired.
Statutes of limitations on criminal offenses must be liberally construed in favor of the accused. Sutton v. State, 784 So.2d 1239 (Fla. 2d DCA 2001). Once a defendant has raised the statute of limitations defense, the burden is on the prosecution to establish that the offense is not barred by the statute. Id. at 1241. The State established that Mr. Netherly was absent from the state between October 1992 and September 1995. However, merely demonstrating his absence was not enough to toll the statute. In order to avail themselves of the three-year tolling provision of section 775.15, the State must have shown that his absence prevented or delayed his prosecution for this offense. This court has repeatedly held that the *437 statute of limitations will not be tolled pursuant to section 775.15(6) in cases where the State is unable to demonstrate that prosecution was delayed due to the defendant's absence from the state. See, e.g., Sutton v. State, 784 So.2d 1239, 1242 (Fla. 2d DCA 2001); Brown v. State, 674 So.2d 738 (Fla. 2d DCA 1995); State v. Miller, 581 So.2d 641 (Fla. 2d DCA 1991).
Mr. Netherly maintains the limitations period should not have been tolled because the State was aware that he had relocated to Tennessee. We agree. The record indicates that the Netherlys were, at all times, available to be charged after they moved to Tennessee. There were no charges pending against the Netherlys which would have prohibited them from leaving Florida. It is clear from the record that they did not move to Tennessee to elude authorities. The Netherlys cooperated during several investigations related to Premiere's closing and were in continuous contact with state and federal officials after they moved to Tennessee.[2] Moreover, during this period, Mr. Netherly participated in a pretrial diversion program for bad check charges and sent checks to the Pinellas County State Attorney's office which were drawn on a Tennessee bank.
Because Mr. Netherly's absence from the state did not delay his prosecution for this offense, the trial court erred in denying his motion to dismiss this charge. Mr. Netherly's conviction as to count 1 is therefore reversed.[3]
The Netherlys also contend that count 2 of the fourth amended information (second-degree misapplication of construction funds) was barred by the statute of limitations. This offense was first charged in the State's second amended information, and the timeliness of the charge was the subject of the Netherlys' 1997 petition for writ of prohibition. This court reviewed this issue on its merits at that time. Consequently, further review is procedurally barred. In Sumner v. Sumner, 707 So.2d 934 (Fla. 2d DCA 1998), we confirmed our position regarding posttrial review of the denial of a writ of prohibition. Citing Public Employees Relations Commission v. District School Board of De Soto County, 374 So.2d 1005 (Fla. 2d DCA 1979), we held that such denials will bar subsequent review if the order indicates that the denial is with prejudice or if it otherwise evinces an unequivocal determination by this court that the merits were considered. Id. at 935. The latter circumstance bars reconsideration of the issue in this appeal.

Proof of Misapplication of Funds
Next, the Netherlys claim the State failed to produce sufficient evidence to support their convictions for misapplication of construction funds. They maintain the trial court erred in admitting claims of lien over defense counsel's objection.[4]
*438 Section 713.345, Florida Statutes (1991) (Monies received for real property improvement), provides, in part:
Any person, ... who receives any payment on account of improving real property must apply such portion of any payment to the payment of all amounts then due and owing for services and labor which were performed on, or materials which were furnished for, such improvement prior to receipt of the payment.
§ 713.345(1)(a) (emphasis provided). Subsection (1)(b)2. provides that the person who knowingly and intentionally fails to apply payments in compliance with subpart (1)(a), quoted above, is guilty of misapplication of construction funds. As the plain language of the statute indicates, the level of the offense is not measured by the victim's out-of-pocket loss but is instead measured by that portion of payments made to the builder which were not applied to the victim's property improvements in compliance with subpart (1)(a). § 713.345(1)(a). The amount misapplied may be established by measuring how much the builder was paid against amounts due and owing for services and labor performed on the property.
In several counts, the State sought to establish amounts due and owing by simply admitting claims of lien filed by subcontractors and materialmen. However, the law in Florida is well established. Proof of filing a claim of lien is proof of nothing more than an existing claim. See, e.g., Hartstone Concrete Prod. Co. v. Verkauf, 147 So.2d 194, 196 (Fla. 2d DCA 1962); Leedy v. First Fed. Sav. & Loan Ass'n of Cocoa, 142 So.2d 99, 101 (Fla. 2d DCA 1962); Bankers & Shippers Ins. Co. of N.Y. v. AIA Insulation Indus. Inc., 390 So.2d 734, 737 (Fla. 4th DCA 1980) (noting that claims of lien were admitted in evidence for the limited purpose of showing that claim had been recorded, not to prove the truth of the matter contained in the claim). Thus, a claim of lien, in itself, does not conclusively establish the amount due and owing. It was also necessary for the State to elicit testimony from each lien claimant to prove the furnishing of labor and materials claimed in each lien and nonpayment. Hartstone, 147 So.2d at 194. The State failed to present such proof for counts 2, 14, and 15.
The State presented testimony from Mr. O'Neill, the victim in count 2, establishing that there were outstanding liens on his home totaling $35,437.41. Although claims of lien totaling this amount were admitted in evidence,[5] there is insufficient subcontractor testimony in the record to support this sum. Subcontractor testimony elicited by the State only supports claims of lien totaling $3016.50. We therefore reverse the Netherlys' convictions on count 2 for second-degree misapplication of construction funds. § 713.345(1)(b)2. On remand, the court is directed to reduce the charges to third-degree misapplication and resentence the Netherlys accordingly. § 713.345(1)(b)3.
As for count 14, the State presented testimony from Mrs. Mesner indicating that none of the subcontractors who worked on her home were ever paid in full. However, there is no subcontractor testimony establishing the validity of claims of lien filed against the Mesner home. We therefore reverse the conviction against Mr. Netherly on count 14. The State also failed to present sufficient proof of the validity of claims of lien for the victim in *439 count 15. Although the State presented testimony from Mrs. Morales indicating that approximately $10,000 in liens were filed against her home, there is no subcontractor testimony in the record to support these claims. Therefore, the convictions on count 15 against the Netherlys must likewise be reversed. The State produced sufficient evidence to support the Netherlys' convictions as to the remaining counts of misapplication of construction funds.

Proof of Intent
The Netherlys contend the State failed to prove criminal intent as to the grand theft counts. We disagree. The State proved intent as to each of these counts by producing evidence that the Netherlys knowingly and intentionally coerced subcontractors and materialmen to execute lien waivers in order to receive partial payment, executed false affidavits in order to obtain bank draws, falsified office computer records to make it appear that subcontractors were being paid, and over a fifteen-month period, used company funds to pay personal expenses, including their home mortgage payments and utility bills. There is ample evidence in the record before us to establish intent.

Sufficiency of Evidence
In the final argument challenging their convictions, the Netherlys claim that the State failed to produce sufficient evidence as to counts 4 (grand theft of $300 or more but less than $5000) and 10 (misapplication of construction funds of $300 or more). The Netherlys argue that because the victims (the Bases and Blaevelts) did not appear at trial, the State failed to prove that they committed the offenses. We disagree.
Testimony from Katrin Earring, Premiere's bookkeeper, and David Kurash, the State's investigator, established that the Netherlys entered into a construction contract with the Bases, accepted a deposit of $9650 from them, and failed to initiate construction on their home. This evidence sufficiently established theft of the Bases' deposit. The State further established that the Blaevelts contracted with Premiere to build a $118,200 home. The Netherlys received a total of $119,700, which apparently included payments for upgrades, however liens totaling $18,268.50 were subsequently filed against the home. Although there is insufficient subcontractor testimony in the record to support the total amount of liens filed against the Blaevelt home, the evidence was sufficient to establish the validity of a claim of lien filed in the amount of $869. Because count 10 charged misapplication of $300 or more, this testimony is sufficient to support the Netherlys' convictions for this count.

Sentencing Errors
With the exception of counts 1 and 2, all of the offenses of which the Netherlys were found guilty are third-degree felonies subject to a maximum statutory sentence of five years' imprisonment. § 775.082(3)(d), Fla. Stat. (1991). Mr. Netherly was originally sentenced on all counts to five years' imprisonment and ten years' probation. Mrs. Netherly was sentenced, on all counts, to four and one-half years' imprisonment, to be followed by ten years' probation. The split sentences imposed in both cases are illegal because they exceed the maximum statutory sentence for third-degree felonies, as well as the maximum permissible guidelines sentence.[6]Willis v. State, 736 So.2d 1251 (Fla. 2d DCA 1999) (reversing an illegal split sentence, the sum of which exceeded the statutory maximum and the maximum sentence permitted by the guidelines). On *440 remand for resentencing based on the failure of proof as to count 2, the court shall correct the illegal sentences imposed for the remaining counts.
Affirmed in part, reversed in part, and remanded for resentencing.
CASANUEVA, A.C.J., and SALCINES, J., concur.
NOTES
[1] Section 775.15(6), Florida Statutes (1991) provides:

The period of limitation does not run during any time when the defendant is continuously absent from the state or has no reasonably ascertainable place of abode or work within the state, but in no case shall this provision extend the period of limitation otherwise applicable by more than 3 years.
[2] While in Tennessee, the Netherlys were under investigation by the Federal Bureau of Investigation and Florida's Department of Professional Regulation. It appears the Netherlys cooperated fully during these investigations. Also, the record indicates that in August 1993, the Netherlys filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee, and several of the victims in the present case participated in those proceedings. These facts further support our conclusion that the Netherlys' move to Tennessee did not delay or prevent prosecution.
[3] Based on our ruling on this issue, we need not reach the merits of the remaining arguments which challenge Mr. Netherly's conviction for count 1.
[4] We note that the claims of lien were admissible under section 90.803(6), Florida Statutes (1997), as business records. However, their admissibility should have been limited to establishing that claims had in fact been filed.
[5] The claims of lien admitted at trial were not made part of the record on appeal. The State admitted most of these claims as composite exhibits and did not have the subcontractors address each claim individually.
[6] The State concedes error in both cases.