[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 7, 2007
THOMAS K. KAHN
CLERK

No. 06-13922

D. C. Docket No. 05-01764-CV-TWT-1

PROFITEL GROUP, LLC,
a Georgia Limited Liability Company,

Plaintiff-Counter-
Defendant-Appellant
Cross Appellee,

versus

POLYONE CORPORATION,
an Ohio corporation,

Defendant-Counter-
Claimant-Appellee
Cross Appellant.

Appeals from the United States District Court
for the Northern District of Georgia

**(June 7, 2007)**

Before TJOFLAT, BLACK and EBEL,[*] Circuit Judges.

PER CURIAM:

ProfiTel audits telecommunications bills for corporate clients and identifies telecommunications overcharges and billing errors. It sued PolyOne, a former client, alleging that PolyOne received a credit from its telecommunications company, MCI, on the basis of ProfiTel's audit findings. ProfiTel claims that it is thus entitled to compensation pursuant to the consulting contract both entities signed at the onset of ProfiTel's services. PolyOne counterclaims, alleging that ProfiTel breached the contract because its audit services unduly burdened PolyOne's personnel. The district court concluded that neither party's claims could survive summary judgment. We conclude, however, that the court below misinterpreted the consulting contract and erred by failing to credit evidence that PolyOne received value from the consulting services. Because such evidence is sufficient for ProfiTel's claim to survive summary judgment, we REVERSE and REMAND for further proceedings on that issue. However, we AFFIRM the district court's ruling that PolyOne's counterclaim must be dismissed, because it failed to establish causation and damages.

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

# I. DISCUSSION

In the fall of 2002, ProfiTel offered its services to PolyOne to identify any billing errors against PolyOne's volume telecommunications services contract with MCI. ProfiTel would not bill PolyOne for these services. Instead, under a contingency arrangement, ProfiTel would receive 50 percent of the amount of any recovery for over-charges identified in the audit.

The parties signed a consulting agreement in July 2003 setting forth these compensation terms. The contract also obligated PolyOne to provide the underlying information needed for the audit and required that ProfiTel not use PolyOne's staff in carrying out the audit work. ProfitTel commenced work on the audit and, in August 2003, notified PolyOne that MCI had overcharged PolyOne by more than $1 million for domestic frame relay services. ProfiTel based that conclusion on its position that MCI's contract with PolyOne entitled PolyOne to two discounts, both an express discount described in the contract and a generic discount that MCI is obliged to apply by virtue of its tariff filings with the Federal Communications Commission ("FCC").

ProfiTel then drafted a letter for PolyOne to send to MCI to claim the overcharges, based on ProfiTel's theory that PolyOne was entitled to the additional discount. PolyOne placed the letter on its letterhead and sent it to MCI

3

on December 19, 2003. MCI denied the claim in its entirety on January 24, 2004, asserting that no billing error had occurred. ProfiTel drafted another letter for PolyOne to send to MCI to protest the denial, which PolyOne sent on February 18, 2004. In late April 2004, MCI sent another letter to PolyOne reiterating that the claim was denied. PolyOne alleges that, during this time, it devoted staff resources to ascertaining the validity of the claim, responding to requests for information, and assisting ProfiTel.

Following MCI's denials of the claim, ProfiTel recommended that PolyOne file a complaint with the FCC to resolve the billing dispute. ProfiTel states that it met with PolyOne in December 2004 to discuss a strategy for pursuing an FCC claim, but that PolyOne told ProfiTel "for the first time" that it believed MCI's billings were correct and "that it was abandoning its billing error claim against MCI." PolyOne contends that it questioned the accuracy of ProfiTel's audit findings and conclusions much earlier, when ProfiTel "first presented" the alleged billing error to PolyOne.

At the same time that ProfitTel was finalizing its audit report and preparing to file a complaint with the FCC, a problem was developing in the three-year volume contract between PolyOne and MCI. Sometime in the summer of 2004, MCI alerted PolyOne that PolyOne would fail to meet its minimum usage

4

obligations for the first year of the contract, which was to end July 31, 2004. Under the contract's terms, PolyOne would face $1 million in underutilization penalties for that year, and if the same pattern continued, another $2 million in penalties for the remaining two years of the contract.

MCI and PolyOne began negotiations to amend this contract. PolyOne presented evidence that a senior vice president at MCI working on these negotiations was unaware of PolyOne's earlier allegations of a billing error. PolyOne states that "[a]t no time during the negotiation of these terms did MCI or PolyOne ever raise the ProfiTel 'billing error' allegation or use that allegation as a bargaining chip."

Nevertheless, when the new agreement between PolyOne and MCI was finally signed in late February 2005, in addition to waiving the past penalty for underutilization, lowering utilization requirements for future years, and raising from 90 percent to 95 percent PolyOne's exclusivity relationship with MCI, the agreement included the following language releasing MCI from any billing error claims:

> Customer hereby releases, forever quitclaims, and discharges MCI . . . from any and all claims . . . arising out of any alleged or actual billing errors related to frame relay services provided by MCI to customer prior to December 31, 2004 (the "Released Claims"). This release and discharge from all claims and liabilities applies to matters now known

and to all matters that may hereafter be discovered, if any, with respect to the Released Claims above. After execution of this Amendment, Customer shall thereafter be barred from bringing any charge, complaint or other action against MCI relating to such matters.

ProfiTel Group, LLC v. PolyOne Corp., No. 1:05-CV-1764, 2006 U.S. Dist. LEXIS 44987, at \*4-5 (N.D. Ga. June 19, 2006).

On July 5, 2005, ProfiTel filed a breach-of-contract action against PolyOne, alleging that PolyOne received valuable concessions in its contract renegotiations with MCI as a result of the billing errors identified by ProfiTel, and thus the concessions were a "credit" by MCI that should trigger ProfiTel's right to compensation under its consulting agreement with PolyOne.

PolyOne counterclaimed for breach of contract, alleging that ProfiTel had inappropriately used PolyOne's staff for the audit and that ProfiTel's performance fell below the standard of commercial reasonableness because it engaged in the unauthorized practice of law. PolyOne claimed it was damaged by the wrongful use of its staff because they were diverted from cost-saving initiatives that could have been implemented earlier.

The district court, on cross-motions for summary judgment, dismissed both parties' claims. The court interpreted the consulting contract to require ProfiTel to identify legally valid "billing errors" as a condition for ProfiTel receiving payment

6

for services, and concluded that ProfiTel's theory of audit recovery was not valid

under telecommunications and contract law.  In the alternative, the district court

decided that even if ProfiTel had found a valid billing error, it had failed to show

that PolyOne received monies or a credit for the error.  Regarding PolyOne's

counterclaim, the district court determined that PolyOne's alleged loss of the

opportunity to save additional money through more timely implementation of cost-

savings initiatives was simply "too speculative to establish the existence of

damages."  ProfiTel Group, 2006 U.S. Dist. LEXIS 44987, *38.

    Both parties appealed.


*A.  Interpretation of the Term "Billing Error" in the Consulting Contract*

    The interpretation of a contract is a question of law we review de novo.

Daewoo Motor Am., Inc. v. Gen. Motors Corp., 459 F.3d 1249, 1256 (11th Cir.

2006).  "If a contract is clear and unambiguous, then its interpretation is a matter

of law and there is no issue of fact to be determined."  Nationwide Mut. Fire Ins.

Co. v. Guman Bros. Farm, 652 N.E.2d 684, 686 (Ohio 1995) (quotation omitted).[1]

"The purpose of contract construction is to effectuate the intent of the parties, and

---

[1] The parties do not dispute that Ohio law governs this interpretation, because the consulting contract so provides.

7

that intent is presumed to reside in the language they chose to employ in the agreement." State ex rel. Petro v. R.J. Reynolds Tobacco Co., 820 N.E.2d 910, 915 (Ohio 2004) (quotations omitted). "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co., 374 N.E.2d 146, 150 (Ohio 1978). "When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Shifrin v. Forest City Enters., Inc., 597 N.E.2d 499, 501 (Ohio 1992).

Section 2.1 of the consulting contract between ProfiTel and PolyOne stated:

[ProfiTel's] fee from "Audit Findings," as defined in Section 1.1 of this agreement, shall be 50% of all monies and/or credits for past billing errors and non-conformance actually recovered by [ProfiTel] on behalf of [PolyOne]. Payment of [ProfiTel's] fee from Audit Findings is due and payable 30 days from the date such monies or credits are recovered or realized by [PolyOne]. . . . For an abundance of clarity, [ProfiTel] will receive a percentage only of recoveries for past billing errors and non-conformances; [ProfiTel] will not receive a percentage of any recoveries on future billings.

Section 1.1 of the consulting contract states that "[p]ast billing errors and non-conformance(s) shall be identified by [ProfiTel] to [PolyOne] and will be defined as Audit Findings," and further puts the term "audit findings" in context

8

by stating that "[ProfiTel] will file a claim to recover any and all Audit Findings on behalf of [PolyOne]." Therefore, the term "billing error" has no meaning independent of the term "audit finding."

The district court considered "billing error" to mean only those identified amounts for which PolyOne would have a valid legal claim to recover. However, nothing in the four corners of the consulting agreement gives rise to this definition, nor is there any suggestion that this is what the parties intended. The contract lacks any implication that the parties even contemplated that ProfiTel's audit findings would have to be "validated" in any manner other than PolyOne's actual recoveries due to the audit findings.

Instead, we conclude that the term "billing errors" is defined the same as "audit findings" in this contract, and that these terms should be given their "plain and ordinary meaning." Alexander, 374 N.E.2d at 150. Under Section 1.1, it is ProfiTel who has the power to identify and define audit findings. Section 2.1 provides compensation for audit findings only to the extent monies and credits are "actually recovered." The ready conclusion is that "billing error" here means a finding by ProfiTel identifying an arguable billing error that proves to be a basis for a recovery by PolyOne from MCI. There is no evidence that the parties to the agreement intended anything other than a "plain and ordinary" commercial

9

meaning to the terms "error" and "finding," which generally would be defined as the errors and findings an auditor or consultant identifies in the telecommunications bills. We find no additional requirement that the validity of the asserted error be upheld as a legally-recoverable claim in a court of law before it qualifies as a billing error.

Therefore, the district court erred in its determination that, irrespective of whether MCI in fact provided credits or monies to PolyOne based on ProfiTel's audit findings, ProfiTel's audit findings do not identify "billing errors" because those claims are not enforceable as a matter of law. Because we hold the term "billing errors" in the consulting agreement requires only a recovery by PolyOne in order to trigger a right to compensation, we reverse the district court on this issue. On remand, the district court should focus on whether PolyOne actually recovered credits or monies from MCI as a result of the alleged billing error identified in ProfiTel's audit.

*B. Whether MCI-PolyOne Contract Concessions Amounted to a "Credit" to PolyOne*

The district court alternatively concluded that ProfiTel had not shown that there was a connection between its audit findings and the concessions PolyOne

10

received in its renegotiated contract with MCI. We reverse this holding as well, because ProfiTel has put forth adequate evidence to survive summary judgment on the issue of whether the new MCI-PolyOne contract terms amounted to a "credit" given by MCI to PolyOne for the billing errors ProfiTel identified.

As a preliminary matter, we conclude that the term credit in the consulting agreement between ProfiTel and PolyOne is not limited to an explicit monetary refund by MCI. Credit is a "common word[]" that is "to be given [its] plain and ordinary meaning," Alexander, 374 N.E.2d at 150, and although in some contexts this may be defined strictly in book-keeping terms, credit also is often defined as a "deduction from an amount otherwise due." Webster's Third New International Dictionary 532-33 (1981). Moreover, the fact that under the consulting agreement ProfiTel is entitled to compensation if "credits are recovered or realized" suggests that credits may not necessarily be money-in-hand. We need not explore the outer limits of that language here. We conclude only that the term "credit" in the consulting agreement is broad enough to include valuable concessions allegedly given by MCI to PolyOne that were based on billing errors identified by ProfiTel.

ProfiTel survives summary judgment because there is a genuine factual dispute regarding the connection between the identified billing errors and MCI's concessions to PolyOne. "Summary judgment should be entered only if there is no

11

genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Clemons v. Dougherty County, 684 F.2d 1365, 1368 (11th Cir. 1982) (quoting Fed. R. Civ. P. 56(c); alteration omitted). We have been clear on how a court must address factual disputes on summary judgment:

> All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.

Id. at 1369 (citations omitted). "[T]he mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (quotation, alterations omitted).

Here, both parties moved for summary judgment on ProfiTel's claim that PolyOne breached the consulting contract by not paying ProfiTel for its work in identifying billing errors. ProfiTel's evidence that it is entitled to compensation principally consists of: (1) the release of claims language relating to the billing errors placed in the very contract in which the underutilization penalties were avoided; (2) the fact that other terms of the new PolyOne-MCI contract had little monetary value to MCI, raising an inference that the penalty waiver and release of

12

billing error claims were the most valuable terms; and (3) documentation that MCI and PolyOne representatives discussed the alleged billing errors in the context of the underutilization concessions.[2] PolyOne also has significant evidence that there was no connection between the audit findings and MCI's penalty waiver. PolyOne's evidence suggests that: (1) PolyOne unilaterally decided to abandon the claim related to billing errors rather than use it as leverage in negotiations with MCI; (2) MCI was prepared to waive the underutilization penalty and renegotiate at a lower volume for future years regardless of the existence of a claim for billing errors; and (3) MCI added the release of claims language as a mere "afterthought."

With this universe of evidence, summary judgment is clearly inappropriate for either party. Both parties offered more than the "mere existence of a scintilla of evidence" required to withstand summary judgment as a non-movant. Burton, 178 F.3d at 1187. There is a "genuine issue as to [a] material fact," Clemons, 684 F.2d at 1368, namely whether MCI's decision to waive current and future underutilization penalties had a connection to PolyOne's original claim that MCI had overcharged it for telecommunications services. "[R]easonable minds might differ on the inferences arising from undisputed facts," which here would include

_____

[2] Much of this evidence has been sealed due to its proprietary nature.

13

the release of claims language and documented emails, so "the court should deny summary judgment." Id. at 1369.

In conclusion, although the district court was correct to deny ProfiTel's motion for summary judgment on the issue of whether PolyOne breached the consulting agreement, it erred by granting summary judgment to PolyOne. We reverse that holding and remand for further proceedings.[3]

*C. Whether PolyOne's Alleged Damages in its Counterclaim Are Too Speculative*

PolyOne counterclaimed that ProfiTel breached the consulting agreement by inappropriately using PolyOne's staff resources to pursue the claim against MCI and by engaging in the unauthorized practice of law. PolyOne alleged it was damaged by delays in implementing cost-savings initiatives due to the time PolyOne personnel spent on ProfiTel's audit. The district court granted summary judgment to ProfiTel, holding that PolyOne's damages were too speculative to

---

[3] The district court did not decide whether ProfiTel's alleged damages – compensation due from the consulting agreement – could be quantified under ProfiTel's theory that PolyOne received a credit from MCI in the form of utilization concessions. However, the court observed that the alleged billing errors totaled around $1 million, but the value to PolyOne of MCI waiving the underutilization penalty and setting revised volume requirements was $3.15 million. Whether ProfiTel can quantify its damages is a matter that may have to be addressed on remand, but it is not an issue that is presented to us on this appeal.

support its claim, and that PolyOne had not established that any alleged breach by ProfiTel caused such damage. We agree.

Questions of causation and damages often are addressed simultaneously in breach-of-contract actions. "Damages must arise as a result of the breach and must naturally and necessarily flow from the breach of contract." Nichols v. Chicago Title Ins. Co., 669 N.E.2d 323, 328 (Ohio Ct. App. 1995) (quotation omitted). A claim for lost cost-savings is analogous to a claim for lost profits. While Ohio law recognizes a claim for lost profits, it requires that the "profits were within the contemplation of the parties at the time the contract was made, the loss of profits is the probable result of the breach of contract, and the profits are not remote and speculative and may be shown with reasonable certainty." Charles R. Combs Trucking, Inc. v. Int'l Harvester Co., 466 N.E.2d 883, 887 (Ohio 1984).

PolyOne alleges opportunity costs of $638,638 based on the money "lost" due to the time that PolyOne spent responding to ProfiTel's audit activities. PolyOne's evidence at summary judgment consisted of a PolyOne executive's testimony on the specific cost-savings initiatives that had been scheduled for implementation, the duration of the delay of each, and the projected savings that were lost during that time. PolyOne's damages claim does not focus on the

overhead and staff cost associated with the actual time spent reviewing ProfiTel's audit work, but instead sought to recover opportunity costs.

However, PolyOne's testimony did not show that its support of the billing errors identified by ProfiTel actually caused specific delays for particular projects, and it did not take into account whether other factors could have caused or contributed to the alleged implementation delays. Moreover, PolyOne makes no distinction between staff time that would normally be spent reviewing a billing audit conducted by an outside party such as ProfiTel and time that should have been protected by the consulting agreement. In addition, PolyOne has assumed, without substantiation, that staff time improperly spent on the ProfiTel audit would have generated savings to PolyOne.

PolyOne's evidence at the summary judgment stage was simply too flimsy to establish that ProfiTel's audit activities caused the asserted delays in cost-saving initiatives, and that such delays resulted in opportunity costs of $638,638. We affirm the district court's dismissal of PolyOne's counterclaim.

## II. CONCLUSION

We REVERSE the district court's decision awarding PolyOne summary judgment on ProfiTel's claim, and we hold that the term "billing error" in the

consulting agreement requires only proof of a related recovery or realization of money or credit from MCI based upon an asserted billing error identified by ProfiTel in its audit report.  We also hold that neither party was entitled to summary judgment on the issue of whether PolyOne had breached the agreement.  We REMAND for further proceedings on ProfiTel's claim.  However, we AFFIRM the district court's conclusion that PolyOne's counterclaim must fail, because PolyOne did not present evidence that any breach by ProfiTel caused "lost savings" damages, and because PolyOne's asserted damages were speculative.