Colin BOWE, Plaintiff,

v.

PUBLIC STORAGE, Defendant.

Case No. 1:14–cv–21559–UU.

United States District Court,
S.D. Florida.

Signed May 18, 2015.

Filed May 19, 2015.

Order Denying Reconsideration
June 25, 2015.

Alec Huff Schultz, Andrew Benjamin Boese, James Robert Bryan, David Arnold Karp, Scott Brian Cosgrove, Leon Cosgrove LLC, David Buckner, Grossman Roth, Coral Gables, FL, Brett Elliott Von Borke, Seth Eric Miles, Grossman Roth, P.A., Miami, FL, Plaintiff.

Anjali Srinivasan, David J. Silbert, Erin E. Meyer, John Keker, Michelle Ybarra, Paven Malhotra, Quyen Ta, Steven A. Hirsch, Keker & Van Nest, LLP, San Francisco, CA, David Paul Ackerman, Elio Raul Novoa, Jr., Kristen Lee McKeever, Scott Jeffrey Link, Ackerman Link & Sar-

tory, P.A., West Palm Beach, FL, Defendant.

### OMNIBUS ORDER

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Plaintiffs' Motion to Strike Defendant's Late–Disclosed Summary Judgment Evidence and Witnesses, D.E. 241, and Defendant's Motion for Summary Judgment, D.E. 195. The Motions are fully briefed and ripe for disposition.

THE COURT has considered the Motions and the pertinent portions of the record, and is otherwise fully advised in the premises.

### BACKGROUND

Very little is undisputed in this action. What few facts the parties do not dispute are recited below.

Defendant Public Storage is a Maryland real estate investment trust that, as of December 31, 2013, owns, develops, or operates over 2,200 self-storage facilities in 38 states in the United States. D.E. 206–10 at 6, 19; D.E. 196 ¶ 1; D.E. 254 ¶ 1. When a customer rents a self-storage unit from Public Storage, that customer signs a Lease/Rental Agreement and an Insurance Addendum. D.E. 201–1; D.E. 254–2.

In 2006, Public Storage began requiring tenants [1] to have insurance over their self-storage units. The Insurance Addendum further requires tenants to acknowledge that they are "solely responsible to insure my stored property" and that "the Lease/Rental Agreement requires [the tenant] to maintain insurance that covers loss or damage for the personal property"

stored at the Public Storage facility. D.E. 254–2. The Insurance Addendum allows tenants to elect insurance provided by the Public Storage tenant insurance program ("PSTIP"), which Public Storage represents as underwritten by New Hampshire Insurance Company ("NHIC"), and offered through a separate servicer. Id. In signing the Insurance Addendum, a tenant acknowledges that the "insurance policy offered by this self-storage agent may provide a duplication of coverage already provided by [the tenant's] homeowners' insurance policy or by another source of coverage," but that the "facility and its employees are not qualified or authorized to evaluate the adequacy of any insurance" the tenant may have. Id. The tenant also acknowledges that she will be personally responsible for any loss or damage to her goods if she does not have insurance or her insurance lapses, and that the insurance offered through the Addendum is not required in order to store her goods at a Public Storage facility. Id.

If a tenant elects to participate in the PSTIP, the Insurance Addendum requires the tenant to "authorize [Public Storage] to conduct the administrative function of receiving the premium to send to the insurance company on [the tenant's] behalf." Id. The Addendum states that the tenant has "elected to satisfy [his] obligation to have insurance for the stored goods by purchasing the insurance protection available through Marsh" and that the tenant understands "that the insurance I am applying for [is] underwritten by New Hampshire Insurance Company." Id. The Lease/Rental Agreement requires tenants

---

1. The parties dispute whether this requirement applied to only new tenants or to all tenants as of 2006. Although testimony from Public Storage employees indicates that the program required all tenants to have insurance, and the Public Storage insurance presentation broadly states that "All of our cus-tomers are required to have insurance," D.E. 254–6 at 5, there is no evidence that Public Storage required customers who had existing lease agreements to come into Public Storage locations and verify that they had self-storage insurance.

to acknowledge, in bolded capital letters, that Public Storage "will not insure Occupant's personal property and that Occupant is obligated under the terms of this lease/rental agreement to insure his own goods." D.E. 254–3 at 3.

The levels of coverage offered through the PSTIP have changed during its existence. Presently, the following three levels of coverage are offered: (1) $3,000 of coverage for $11 per month [2]; (2) $4,000 of coverage for $13 per month; and (3) $5,000 of coverage for $15 per month. *Id.* Previously, the following four levels of insurance coverage were offered: (1) $2,000 of coverage for $9 per month; (2) $3,000 of coverage for $14 per month; (3) $4,000 of coverage for $19 per month; and (4) $5,000 per month for $24 per month. D.E. 254–27. Public Storage changed its coverage levels in late 2013. D.E. 201–13; D.E. 201–14; D.E. 254–28.

The parties fiercely dispute the facts surrounding the distribution of PSTIP insurance premiums to various entities. They, however, generally agree to the following facts. PS Insurance Company–Hawaii, Ltd. ("PS Hawaii"), a subsidiary of Public Storage, is a captive reinsurer to which NHIC transfers 100% of the PSTIP risk, up to $5 million per occurrence. D.E. 196 ¶ 16; D.E. 254–35; D.E. 254–4 at 82:21–25. NHIC also transfers 98% of the PSTIP premiums to PS Hawaii. D.E. 254–32 at 172:10–15. PS Hawaii then transfers 75% of the PSTIP premiums to Public Storage. D.E. 196 ¶ 16; D.E. 254 at 6. Public Storage calls this an "access fee" that compensates Public Storage for its administrative services in collecting the insurance premiums from customers, and for giving the PSTIP exclusive access to

Public Storage's large customer base. D.E. 196 ¶ 16. Plaintiffs call this an unearned illegal kickback. D.E. 254 at 6. Plaintiffs contend that Public Storage deceived its customers by not disclosing that it profits from the PSTIP by receiving the access fee. D.E. 253 at 4. Plaintiffs therefore seek disgorgement of all revenues, i.e., the access fees, Public Storage received from the PSTIP. Since the fiscal year ending on December 31, 2009, Public Storage has collected over $288,268,675 in access fees from the PSTIP insurance premiums.[3] D.E. 254–36.

On October 28, 2014, Plaintiffs filed an Amended Complaint, alleging that Public Storage's receipt of the access fee or, as alleged by Plaintiffs, the kickback and Public Storage's failure to disclose this access fee or kickback to its tenants, violate federal RICO laws and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). D.E. 79. Plaintiffs also allege claims for breach of contract, unjust enrichment, and unconscionability. *Id.* On April 29, 2015, the Court granted Plaintiffs' motion for class certification, certifying a national class to resolve Plaintiffs' RICO claims, and certifying a Florida subclass to resolve Plaintiffs' FDUTPA, breach of contract, and unjust enrichment claims. D.E. 305.

### PLAINTIFFS' MOTION TO STRIKE [D.E. 241]

Plaintiffs move under Federal Rules of Civil Procedure 56(c) and 37(c) to strike evidence Public Storage submitted in support of its Motion for Summary Judgment, and to strike witnesses from testifying at trial. Specifically, Plaintiffs argue that the

---

**2.** This level of coverage is still offered in Kansas. D.E. 201 at 5 n. 1.

**3.** Based on the relevant statute of limitations, Plaintiffs are seeking the disgorgement of ac-

cess fees collected from Florida tenants from April 30, 2009, to the present. Plaintiffs are seeking full disgorgement of all access fees collected from October 28, 2010 to the present.

following should be stricken and excluded: (1) Exhibit 6 to the Declaration of Capri Haga in support of Public Storage's Motion for Summary Judgment, which Plaintiffs argue was not disclosed during discovery; (2) Exhibits 9, 10, and 11 to Ms. Haga's Declaration, which Plaintiffs argue would be inadmissible hearsay because they would be offered to prove that other storage companies require and offer similar tenant insurance on similar terms; and (3) Katie Isaac and Clemente Teng, who were disclosed as potential witnesses hours before the discovery deadline and thus could not be deposed by Plaintiffs.

Rule 56(c) provides that a party opposing a summary judgment motion may object to materials cited to support a fact that cannot be presented in a form that would be admissible in evidence. "On motions for summary judgment, a court may consider only that evidence which can be reduced to an admissible form." *Snover v. City of Starke, Fla.*, 398 Fed.Appx. 445, 449 (11th Cir.2010) (internal quotations and citations omitted). "Authentication is a condition precedent to admissibility." *Id.* (internal quotations omitted). Otherwise admissible evidence can be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996).

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821, 824 (11th Cir.2009). "In determining whether the failure to disclose was justified or harmless, we consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 Fed.Appx. 328, 340 (11th Cir.2009). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Berryman–Dages v. City of Gainesville Fla.*, No. 1:10cv177–MP–GRJ, 2012 WL 1130074, at *2 (N.D.Fla. Apr. 4, 2012).

### I. Exhibit 6 to Capri Haga's Declaration

Public Storage does not dispute that Exhibit 6, which is described by Ms. Haga as a "Florida agency license number L090514, issued on August 25, 2014 and held by PSCC, Inc." was not produced during discovery. *See* D.E. 201 ¶ 28; D.E. 201–7. Discovery closed on February 20, 2015, which left Public Storage almost six months to disclose Exhibit 6. D.E. 32. Nonetheless, Public Storage argues that Plaintiffs have suffered no prejudice on Exhibit 6 in support of its summary judgment motion for the following reasons: Public Storage produced another license during discovery; Ms. Haga was questioned about PSCC's limited lines licenses; Public Storage referenced PSCC's limited lines license in many pleadings; and Plaintiffs could have confirmed the existence of PSCC's Florida limited lines license via the Florida Department of Insurance's website.

Public Storage has failed to establish why this exhibit should be allowed. It offers no explanation as to why this document was not disclosed during discovery, and instead argues that Plaintiffs should have independently determined that this document existed. Public Storage's una-

pologetic disregard of disclosure requirements weighs in favor of striking this exhibit. *See Debose v. Broward Health,* No. 08–61411–CIV, 2009 WL 1410348, at *5 (S.D.Fla. May 20, 2009). Public Storage also fails to establish how Plaintiffs have not suffered any prejudice. The license Public Storage asserts was produced in discovery is a different license. D.E. 282–12. It does not look like Exhibit 6 to Ms. Haga's declaration, it has a different title from Exhibit 6, and it does not reference the same Florida statutes that are referenced in Exhibit 6. *Compare* D.E. 201–7 *with* D.E. 282–12. Because of Exhibit 6's late disclosure, Plaintiffs were unable to explore the differences between the two licenses, and what authorizations were imparted to PSCC from each license. Accordingly, Exhibit 6 to Ms. Haga's declaration is STRICKEN.

## II. Katie Isaac and Clemente Teng

■ Public Storage does not dispute that Katie Isaac and Clemente Teng were not disclosed until hours before the expiration of the discovery deadline, and therefore could not be deposed by Plaintiffs. Public Storage explains that Katie Isaac did not obtain discoverable information until the close of discovery, when she began entering into rental contracts with other self-storage facilities around Miami to determine their rental policies and insurance prices. As noted in her declaration, she entered into different rental agreements during the two days before the close of discovery. D.E. 282–11 ¶¶ 3, 4. Given the limited scope of her discoverable information, and because she did not obtain this information until the end of discovery, the Court will not strike her as a witness, so long as Public Storage makes her available for a deposition before trial begins. The Court does not accept Public Storage's statement that she will simply authenticate the contracts she acquired from the various self-storage facilities, as she also has

relevant information regarding how the facilities pitched their insurance programs to her when she entered into the rental agreements.

■ As for Clemente Teng, Public Storage offers no explanation regarding why he was disclosed during the last hours of discovery. Public Storage's failure to disclose Mr. Teng is especially shocking given that he is an employee of Public Storage, and filed a declaration in this case in January. D.E. 110–65. Public Storage argues that Plaintiffs suffered no prejudice based on its late disclosure because Mr. Teng will only testify to the fact that Public Storage publishes its SEC filings on its website. In arguing that Mr. Teng's testimony will not unduly prejudice Plaintiffs at trial, Public Storage demonstrates that it does not consider Mr. Teng's testimony important. Public Storage's late disclosure states that Mr. Teng is the "Vice President of Investor Services" who has discoverable information about "information, documents, and links posted on Public Storage's website located at www.publicstorage.com including Public Storage's filings with the United States Securities and Exchange Commission and Public Storage's posting procedures." D.E. 241–3 at 10. Given Mr. Teng's position and this breadth of potential knowledge, the Court does not agree that Plaintiffs are not prejudiced by having been unable to depose Mr. Teng during discovery. Accordingly, Clemente Teng is STRICKEN as a witness for Public Storage.

## III. Exhibits 9 through 11 to Ms. Haga's Declaration

Plaintiffs move to strike Exhibits 9 through 11 attached to Ms. Haga's declaration, which are copies of rental agreements from Extra Space Storage and SmartStop Storage, and a copy of the SafeStor website, respectively. D.E. 201–10, 201–11, 201–12. Plaintiffs argue that

these exhibits are inadmissible hearsay offered to prove the similarity of the rental policies and insurance programs offered by other storage companies, and that the exhibits cannot be authenticated by Ms. Haga.

 Public Storage contends that Exhibits 9 and 10 can be authenticated through Ms. Isaac, as she is the signatory on the rental agreements. Public Storage also argues that they are not inadmissible hearsay because they are business records and legally operative documents, and therefore fall under exceptions to the rule against hearsay. The Court finds that these documents should not be stricken under Rule 56(c). As the Court has not stricken Ms. Isaac as a witness, she may be able to authenticate Exhibits 9 and 10 at trial. Exhibits 9 and 10 also likely fall under the business records exception to the rule against hearsay under Rule 803(6), and could be admissible at trial so long as Public Storage provides testimony or certification from a records custodian. The Court takes no position, however, on their relevance at trial at this time.

 Exhibit 11, on the other hand, is an unauthenticated print out of a website that does not appear to fall under any exception to the hearsay rule. Ms. Haga's declaration does not even state who accessed the website on January 20, 2015, and no SafeStor employee has been deposed regarding the contents of its website. Accordingly, Exhibit 11 to Ms. Haga's declaration will be STRICKEN.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Legal Standard

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir.2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the nonmoving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

 If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).[4] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the

---

**4.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

Court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

▪ Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

## II. Discussion

Public Storage argues that it should be granted summary judgment on all claims for the following reasons: (A) Plaintiffs have failed to produce any evidence that would establish they suffered an injury to their business or property, a requirement of the RICO statute, by reason of the alleged RICO violations; (B) Plaintiffs' FDUTPA claim fails because that statute does not apply to products that are regulated by Florida's Office of Insurance Regulation and Department of Financial Services, and the PSTIP is an insurance program; (C) Plaintiffs' breach of contract counts fail as a matter of law because Plaintiffs cannot prove damages; (D) Plaintiffs cannot assert an unconscionability claim when seeking only money damages; and (E) Plaintiffs cannot press a claim for unjust enrichment while seeking to enforce an express contract. The Court addresses each of these arguments in turn.

## A. RICO Claims

Plaintiffs claim they suffered a RICO injury consisting of Public Storage's alleged overcharge for the PSTIP and that they are entitled to damages in the full amount of the access fees. Public Storage argues that Plaintiffs have not produced evidence that would prove a RICO injury because they have no evidence from which a fact finder could conclude that the entire access fee is an overcharge. Public Storage also argues that Plaintiffs have produced no evidence showing that any such injury was proximately caused by the alleged misconduct. Because the Court finds that summary judgment should be granted for Public Storage because Plaintiffs have failed to produce evidence proving they suffered a RICO injury, the Court does not address the parties' arguments regarding causation.

The RICO statute allows "[a]ny person injured in his business or property by reason of a" RICO violation to bring a civil suit. 18 U.S.C. § 1964(c). Plaintiffs' theory in their motion for class certification was that they could establish a classwide reasonable inference that class members were injured in their business or property by reason of Public Storage's RICO violations by showing the following: (1) Public Storage made the same misrepresentation to each class member that it would not retain any portion of the PSTIP insurance premiums; and (2) this induced class members to pay "inflated insurance premiums" that included the access fee, or kickback, ultimately paid to Public Storage. D.E.

305 at 29. The Court accepted this theory and granted class certification based on other cases finding there is a classwide reasonable inference of causation where plaintiffs are induced to pay inflated prices for goods or services, thereby suffering a RICO injury, based on defendant's failure to disclose that the price is excessive for the value plaintiffs receive. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir.2013). On summary judgment, the Court now is called upon to determine whether the record contains evidence from which the jury might find Plaintiffs actually suffered a RICO injury.

The parties have cited, and the Court has found, cases from various jurisdictions which address what must be proven to establish a RICO injury based on allegations of overcharges. From the Court's analysis, these cases appear to fall into three categories. The first is where the defendant promises plaintiff that certain services will be rendered, plaintiff pays for those services, but the services are not actually provided. *See Dornberger v. Metropolitan Life Ins.*, 961 F.Supp. 506, 523 (S.D.N.Y.1997) (finding a possible RICO injury because plaintiff "was fraudulently induced to pay a portion of her premiums toward [a New York franchise tax and local service representatives], but did not receive what she bargained for—the tax was not paid, and the local representatives were terminated"). The second is where a plaintiff enters into a contract with a defendant, and then the defendant, through a series of RICO violations, undermines the plaintiff's contractual interest such that the plaintiff loses money. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 (2d Cir.2013) (finding RICO injury where plaintiffs agreed to pay for products on a cost-plus basis, but defendant engaged in scheme that artificially inflated the cost of the products); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) (physicians had contracted with de-

fendants to receive reimbursement for medical services, but defendants engaged in a scheme to underpay plaintiffs' reimbursements). The third and final category is where the defendant charges above fair market value for a service or good based on fraudulent misrepresentations or omissions. *See Cannon v. Wells Fargo Bank, N.A.*, No. C–12–1376, 2014 WL 324556, at *3 (N.D.Cal. Jan. 29, 2014) (finding RICO violation properly alleged where bank was accused of charging insurance premiums that were two to ten times the market rate in order to include kickbacks); *cf. Reiter v. Sonotone, Corp.*, 442 U.S. 330, 342, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (finding person who alleges a wrongful deprivation of money because the price of a good was artificially inflated by reason of defendant's anticompetitive conduct adequately states an injury to her property); *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396, 27 S.Ct. 65, 51 L.Ed. 241 (1906) ("[The city] was injured in its property, at least ... by being led to pay more than the worth of the pipe."); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir.2008) ("In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money.").

■■■ Plaintiffs' theory as to how they suffered a RICO injury is most consistent with the third category. Plaintiffs do not argue that they paid for services that were not rendered, and there is no evidence that Plaintiffs did not actually receive PSTIP insurance in exchange for their premiums. Plaintiffs also do not argue that they were induced into paying more for the PSTIP insurance than originally agreed under their rental agreement and insurance addenda. This argument, too, would prove incorrect because throughout the duration of Plaintiffs' rental agreements, Plaintiffs

paid the insurance premiums they originally contracted to pay. Therefore, Plaintiffs must now show at summary judgment that there is evidence establishing a genuine issue of material fact that they in fact paid inflated prices for the PSTIP.

Plaintiffs do not provide any evidence as to the extent, if at all, that the PSTIP insurance premiums were inflated based on the value of the PSTIP insurance. There is no evidence that comparable self-storage insurance premiums were lower, or that the market for self-insurance policies called for substantially lower insurance premiums. Plaintiffs's analytical leap that the access fee inflated the cost of the premiums because it is "entirely profit" beyond the "funds sufficient to pay insurance claims and expenses as well as an industry-standard profit," does not logically support the conclusion that the access fee inflated the insurance premiums beyond the value of the PSTIP insurance.

Plaintiffs could have shown a RICO injury if they had provided evidence of the extent to which the access fee increased the price of the PSTIP to an amount that exceeded the actual value of the PSTIP.[5] Plaintiffs did not provide this evidence. Accordingly, Plaintiffs' RICO claims must be dismissed. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297–302 (3d Cir.1991) (affirming directed verdict where plaintiff failed to show the difference between the price paid for a security and the security's true value where plaintiff had simply asserted that the stock was worthless); *Maio v. Aetna, Inc.*, 221 F.3d 472, 494 (3d Cir.2000) (affirming dismissal of complaint where plaintiffs had not shown that they "paid too much for the health insurance they received"); *Impress*

*Cmmc'ns v. Unumprovident Corp.*, 335 F.Supp.2d 1053, 1064–65 (C.D.Cal.2003) (dismissing complaint where plaintiffs failed to demonstrate that paying insurance premiums constituted a RICO injury where there was no proof that "the benefits given were less than those purchased with the premiums"); *Ivar v. Elk River Partners, LLC*, 705 F.Supp.2d 1220, 1235 (D.Colo.2010) (finding no RICO injury because the amount plaintiffs paid for property was the value of the property); *Heinold v. Perlstein*, 651 F.Supp. 1410, 1412 (E.D.Pa.1987) (finding no RICO injury where plaintiff conceded that he did not pay more than fair market value for a diamond ring, but was told that the ring could be resold for a higher amount).

In reaching this conclusion, the Court carefully considered the cases upon which Plaintiffs relied to defeat Public storage's motion for summary judgment on the RICO claim, but ultimately determined that they are inapposite as they either arise at the motion to dismiss stage, or are based on different facts than those before the Court. *Welch Foods, Rothstein, Jackson,* and *Cannon* were all decided on motions to dismiss. In those cases, the plaintiffs alleged they paid inflated prices for goods or services, and that these inflated prices included undisclosed kickbacks. *Cannon*, 2014 WL 324556, at *3 (alleging that the premiums charged for insurance were twice to ten times market rates to cover kickbacks); *Jackson v. U.S. Bank, N.A.*, 44 F.Supp.3d 1210, 1218 (S.D.Fla. 2014) (finding allegations sufficient where "cost of insurance" was misrepresented to include a kickback and that amounts paid did not correlate to work that had been performed); *Rothstein v. GMAC Mortg.*,

---

**5.** In fact, that is how Plaintiffs originally alleged their RICO injury, pointing to Safe-Stor's insurance premiums to argue that the PSTIP premiums are "significantly higher than self-storage insurance rates available to consumers on the open market." D.E. 79 ¶ 28. Plaintiffs did not develop any evidence to support these allegations, and have instead abandoned this theory.

*LLC*, No. 12 Civ. 3412, 2013 WL 5437648, at *18 (S.D.N.Y. Sept. 30, 2013) (allegations of RICO injury sufficient where plaintiffs had alleged that they had paid more for insurance than mortgagor had paid despite representations that premiums were for cost of the insurance); *Welch Foods, Inc. v. Moran*, No. 93–CV–0729E(F), 1996 WL 107130, at *9 (W.D.N.Y. Mar. 8, 1996) (allegations were sufficient where plaintiff alleged that it was charged an inflated price for transportation services that included kickbacks). There, the ***allegations*** were sufficient to show that plaintiffs had suffered an injury by paying more for a service than its actual value in order to defeat motions to dismiss pursuant to Rule 12(b)(6), Fed. R.Civ.P. Here, we are at the summary judgment stage, and Plaintiffs have produced no ***evidence*** regarding the PSTIP's actual value.

The other cases Plaintiffs cite arise under materially different facts and are of no assistance to their cause. In *United HealthCare Corp.*, plaintiffs had paid hundreds of thousands of dollars in insurance premiums that did not reach the proper entities, and therefore insurance risks were never properly underwritten. *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 572 (8th Cir.1996). In *Natarajan*, the plaintiff had been denied long term disability benefits he contended were available under his insurance plan. *Natarajan v. Paul Revere Life Ins. Co.*, 720 F.Supp.2d 1321, 1333 (M.D.Fla. 2010). In those cases, the plaintiffs had bargained for insurance coverage, but did not get it; here, Plaintiffs actually received PSTIP insurance coverage and do not contend their premiums were paid for services that were never actually rendered.[6] Finally, in *Negrete*, there was evidence from plaintiffs' damages expert, a financial econ-

omist, that the actual value of annuities plaintiffs purchased was lower than the price paid for the annuities. *See Negrete v. Allianz Life Ins. Co. of N. America*, 2011 WL 4852314, at *9 (C.D.Cal. Oct. 13, 2011) ("According to Dr. McCann, valued as of the applicable purchase dates, Ow paid a total of $409,844 for annuities that were collectively worth only $362,908 and Healey paid $30,000 for an Allianz annuity worth only $24,954."). Here, there is no evidence or testimony that the price paid for the PSTIP was more than the actual value of the PSTIP insurance. Plaintiffs' naked assertion that the value of the PSTIP insurance necessarily cannot include profit as represented by the access fee is insufficient to allow this issue to go to a jury.

In sum, it has become apparent at the summary judgment stage that Plaintiffs do not have any evidence tending to prove that the price paid for PSTIP insurance is inflated. Plaintiffs therefore fail to establish that there is a genuine issue of material fact as to whether they suffered a RICO injury. Thus, summary judgment is warranted against Plaintiffs on their RICO claims. *See McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 752 (11th Cir.2000) ("There is no liability if a RICO violator has not caused injury."); *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1234 (11th Cir.2009) (affirming grant of summary judgment where plaintiffs' expert on injury had been excluded and therefore they had no evidence to support injury claim).

Based on this decision, the Court also finds that Plaintiffs can no longer satisfy the predominance inquiry under Rule 23(b)(3) for their national RICO claim because they cannot establish classwide proof of a RICO injury. Accordingly, the Court will decertify the national class pursuing

---

**6.** There is no evidence in the record of a business practice of not paying claims. D.E.

254–29 at 4 ("Pay claims generously like hurricanes.").

RICO claims. *See Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

### B. FDUTPA Claim

Public Storage asserts that Plaintiffs' FDUTPA claim fails because the PSTIP is regulated by Florida's Office of Insurance Regulation ("OIR") and Florida's Department of Financial Services ("DFS") and is therefore exempt from FDUTPA. Public Storage contends that an entirely separate statute, the Florida Unfair Insurance Trade Practices Act ("FUITPA"), defines and regulates all unfair or deceptive insurance-industry practice and is the sole consumer-protection statute regulating insurance-related activities in Florida. Specifically, FUITPA allows the OIR to regulate "every person" who engages in an insurance-related "unfair or deceptive act or practice," including "misrepresenting the ... conditions, or terms of any insurance policy" as well as "knowingly making ... any statement ... with respect to the business of insurance, which is untrue, deceptive, or misleading." Fla. Stat. §§ 626.9521, 626.9541. Because, Public Storage argues, Plaintiffs' allegations are that Public Storage made misleading and deceptive statements to consumers about the PSTIP—an insurance program—their claims fall within the purview of FUITPA.

Plaintiffs argue that their claims are not subject to the insurance exemption because Public Storage itself is not regulated by the OIR or DFS, and its receipt of an undisclosed kickback from PS Hawaii is fraudulent conduct separate and distinct from insurance activities. Plaintiffs point to the fact that Public Storage consistently takes the position that it is not involved in the business of insurance, and that the access fee, or kickback, is unrelated to insurance sales. Plaintiffs also argue that simply because a subsidiary of Public Storage, PSCC, Inc., holds limited lines licenses and is regulated by DFS, does not allow Public Storage to rely derivatively on the insurance exemption.

■■ FDUTPA does not apply to "[a]ny person or activity regulated under laws administered by ... [t]he Office of Insurance Regulation of the Financial Services Commission; or ... regulated under the laws administered by the ... Department of Financial Services." Fla. Stat. § 501.212. "Florida courts resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the Office of Insurance Regulation." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. Appx. 714, 723 (11th Cir.2011), *rev'd in part on other grounds by State Farm Mut. Auto. Ins. Co. v. Williams*, 563 Fed.Appx. 665, 671 (11th Cir.2014).

■■ Public Storage is not an insurance company regulated by OIR. The licenses that Public Storage cites in support of its contention that it "is regulated by the Department of Financial Services" are held by a subsidiary, PSCC, Inc., and not by Public Storage. D.E. 201–5. That a subsidiary is regulated by the DFS does not mean Public Storage can make the same claim. *Cf. Office of Atty. Gen., Dept. of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. Dist.Ct.App.2007) (finding bank subsidiary could not claim exemption afforded to banks); *Bankers Trust Co. v. Basciano*, 960 So.2d 773, 779 (Fla.Dist.Ct.App.2007) ("Nothing in FDUTPA suggests that bank subsidiaries, affiliates or agents are necessarily exempt from FDUTPA."). Therefore, the question under FDUTPA is whether the activity that is the subject of

this lawsuit is subject to the regulatory authority of OIR.

The FUITPA provisions that Public Storage cites prohibit the following:

(a)(1) Misrepresent[ing] the benefits, advantages, conditions, or terms of any insurance policy....

(b) Knowingly making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public ...

In any other way

an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance, which is untrue, deceptive, or misleading.

Fla. Stat. § 626.9541(1)(a)(1) and (b).

■ This lawsuit clearly does not concern Section 626.9541(1)(a)(1), because Plaintiffs do not allege that Public Storage misrepresented the actual terms of the PSTIP. There is no evidence that Plaintiffs did not receive the coverage they purchased or that Public Storage misrepresented the scope of the PSTIP coverage. There is a closer question as to Section 626.9541(1)(b), which broadly prohibits "untrue, deceptive, or misleading" statements with respect to the business of insurance. The Court can find no case interpreting the breadth of this provision or the specific activity that it is intended to prohibit. However, the Court finds that this provision does not apply to the activity that is the subject of this lawsuit because the alleged misrepresentations and statements that underlie Plaintiffs' allegations are not related to the "business of insurance."

The deceptive conduct that is the subject of Plaintiffs' FDUTPA claim is Public Storage's failure to disclose that it ultimately retains 75% of class members' PSTIP premiums. This conduct is not related to the business of insurance; Plaintiffs do not challenge the rate of the PSTIP *per se*, the amounts or type of coverage provided, or the master insurance policy issued by NHIC. *See Montoya v. PNC Bank, N.A.*, 94 F.Supp.3d 1293, 1315, 2015 WL 1311482, at *20 (S.D.Fla. Mar. 23, 2015). Instead, they argue that the access fee is an unlawful kickback. Public Storage does not assume any risk under the PSTIP in exchange for accepting the access fee. The access fee is paid to Public Storage "for the right to offer insurance coverage to their tenants and cover administrative time of property management personnel." D.E. 253–38 at 20. The access fee is paid based on "total rental units at certain self-storage facilities" and not the number of PSTIP policies sold. *Id.*

■ In reaching this conclusion, the Court considered the Supreme Court's decision in *Union Labor Life Insurance v. Pireno*, in which it identified three criteria to determine whether an activity is part of the "business of insurance" under the McCarran–Ferguson Act. The McCarran–Ferguson Act provides that no federal statute "be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012. As stated by the Supreme Court, the three criteria "relevant in determining whether a particular practice is part of the 'business of insurance' exempted from the antitrust laws" are: (1) "whether the practice has the effect of transferring or spreading a policyholder's risk"; (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured"; and (3) "whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Here, Public Storage's receipt of the access fee, and its concealment of the access fee from its

tenants, do not satisfy any of these criteria. Public Storage does not accept any part of the PSTIP policy members' risk, the practice is not integral to the tenants' relationship with NHIC, and the practice is not limited to entities within the insurance industry as Public Storage is not in this industry.

Additionally, *Montoya* is based on similar facts and is, therefore, instructive. In *Montoya*, the plaintiff alleged that the insurer for lender-placed insurance gave the plaintiff's mortgage holder kickbacks in order to gain the exclusive right to force its insurance on plaintiff's property. 94 F.Supp.3d at 1315, 2015 WL 1311482, at *21. The *Montoya* court found that the allegations were not directly related to the ordinary business of insurance as defined by the McCarran–Ferguson Act, even though one of the defendants was an insurer and the lawsuit involved lender-placed insurance. *Id.*

Finally, Public Storage contends that because Plaintiffs retained an expert, Tim Ryles, who submitted a report detailing the various ways that Public Storage has violated Florida insurance regulations, their FDUTPA claim falls under the insurance exemption. The Court notes that there is a pending motion seeking to exclude Ryles' testimony. In opposition to this motion, Plaintiffs represent that they intend to call Dr. Ryles to demonstrate "that Public Storage acted with the requisite fraudulent intent to defraud its customers ... and to prove that Public Storage deceived insurance regulators in furtherance" of its scheme. D.E. 252 at 3. Regardless of whether Dr. Ryles's testimony proves admissible, Plaintiffs' FDUTPA claim is based on Public Storage's failure to disclose that it receives a

kickback from tenants' insurance premiums, *see* D.E. 79 ¶¶ 30–44, 81–83, not the insurance regulatory violations about which Dr. Ryles opines.

Finally, the Court addresses, although not raised in its Motion for Summary Judgment, Public Storage's argument in its motion in limine that Plaintiffs cannot recover the access fee as damages under FDUTPA. This argument is similar to the argument advanced above regarding Plaintiffs' RICO injury claims and, if correct, would also merit summary judgment on Plaintiffs' FDUTPA claim because damages are an element of such a claim. *See Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir.2013) ("To state an FDUTPA claim, Dolphin must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages.... Dolphin made no allegation and presented no evidence that the allegedly misleading statement caused Dolphin's claimed damages. Because Dolphin failed to establish one of the elements of its FDUTPA claim, WCI was entitled to summary judgment on this claim.").

Summary judgement in favor of Public Storage, however, would not be warranted on Plaintiffs' FDUTPA claim because the measure of damages is different and the record contains evidence supporting Plaintiffs' damages theory. Under FDUTPA, a plaintiff is entitled to "actual damages." Fla. Stat. § 501.211(2). Although there is no statutory definition regarding how to measure "actual damages," the measure of damages in this action is governed by the factually analogous case, *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. Dist.Ct.App.2000).[7]

In *Latman*, a Florida appellate court reversed an order denying certification of

---

7. The Court recognizes that other cases have iterated a measure of "actual damages" that measures the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the

a class of cruise ship passengers bringing a FDUTPA claim against Costa Cruise Lines. *Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla.Dist.Ct.App.2000). Plaintiffs had purchased cruise tickets that included the cruise price and port charges. *Id.* at 701. Plaintiffs agreed to pay the port charges up front. *Id.* The cruise line kept a portion of the port charges for itself. Plaintiffs contended that the term " 'port charges' necessarily informs the consumer that these are 'pass-through' charges paid by the cruise line to the relevant port authorities." *Id.* By keeping a part of the charge, plaintiffs alleged that the cruise line violated FDUTPA. *Id.* The court found that this was a deceptive practice because the term "port charges" "constitutes a representation to a reasonable consumer that these are 'pass-through' charges which the cruise line will pay to the relevant port authorities (and possibly others)." *Id.* at 703. "Reliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." *Id.*

One way to interpret *Latman* is that the value of the "port charge" is what was passed through to the cruise line and therefore everything the cruise line kept was excess above the actual value. But that is not how subsequent decisions have interpreted *Latman.* In *Berry,* the court reasoned "in *Latman,* it was not the excess amount of the fee that was deceptive, but rather the fact that the company charged what appeared to be a pass-through fee for a third-party but retained a portion for itself." *Berry v. Budget Rent A Car Sys., Inc.,* 497 F.Supp.2d 1361, 1367 (S.D.Fla.2007). Also, Public Storage's argument that *Latman* does not apply here

because " 'port charge' deceptively suggests that it is a government charge in the nature of a tax," D.E. 298 at 8 n. 10, is not a persuasive distinction and has been rejected by other courts. *See Costa v. Kerzner Int'l Resorts, Inc.,* No. 11–60663–CV–COHN, 2011 WL 2519244, at *2 n. 2 (S.D.Fla. June 23, 2011) ("Defendants' attempt to distinguish *Latman* on the basis that the 'port charges' at issue were intended to be paid to a government entity is a distinction without a difference for purposes of whether a deception occurred.... The use of the term 'gratuity' in the present action, as opposed to 'fee' or 'service charge,' would lead a reasonable consumer to believe that those funds are a pass-through to the housekeeping staff.").

Therefore, in a situation like this, where Public Storage separately charged Plaintiffs and class members for "Insurance" on their account receipts, *see* D.E. 79–6 at 4, and where Public Storage represented that it would "conduct the administrative function of receiving the premium to send to the Insurance company" on the tenant's behalf, a reasonable fact finder could find it was a deceptive practice for Public Storage to represent that the premiums would be "passed through" to the insurance company and then secretly retain a portion of the insurance premium for itself. And, under these circumstances, analogous to the port charges in *Latman,* the full amount of the access fees would then be an appropriate measure of FDUTPA damages.

### C. Breach of Contract Claim and Breach of Contract for the Breach of Duty of Good Faith and Fair Dealing Claim

Public Storage moves for summary judgment on both Plaintiffs' breach of con-

---

parties." *Gastaldi v. Sunvest Resort Communities, LC,* 709 F.Supp.2d 1299, 1304 (S.D.Fla.2010). However, the cases cited in

*Gastaldi* and others applying that standard arise under factually dissimilar circumstances.

tract claim, and on Plaintiffs' breach the duty of good faith and fair dealing claim.

For both claims, Public Storage argues that Plaintiffs are improperly seeking damages that would put them in a position better than they would have occupied had the contract been performed. As explained by Public Storage, the "alleged nondisclosure did not affect the quality or amount of insurance that the contract promised and that the plaintiffs undisputedly received." D.E. 195 at 22. Plaintiffs respond that returning the access fee would put them in the same position they would have been in had Public Storage not breached the contract. D.E. 253 at 18.

The Restatement (Second) of Contracts explains that there are three types of remedies available to a party when there is a breach of contract:

> Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee:
>
> (a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed,
>
> (b) his "reliance interest," which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made, or
>
> (c) his "restitution interest," which is his interest in having restored to him any benefit that he has conferred on the other party.

Restatement (Second) of Contracts § 344 (1981). Plaintiffs are seeking restitution for Public Storage's alleged breach of contract.

Plaintiffs contend that Public Storage breached the provision in the insurance addenda representing that Public Storage would "conduct the administrative function of receiving the premium to send to the insurance company on [the tenant's] behalf" by retaining 75% of the insurance premium through payment of the access fee. Plaintiffs also contend that Public Storage breached the rental agreement's clause stating Public Storage "will not insure occupant's personal property" by causing a wholly-owned subsidiary to reinsure 100% of the risk up to $5 million per occurrence. Based on Plaintiffs' own theory, they cannot recover any expectation damages because they would be in the same position they are presently had the contract been fully performed. In other words, had the contract been fully performed, the entirety of their insurance premiums would have been remitted to NHIC. Under the contract, Plaintiffs would still be required to pay the full PSTIP premiums.

Instead, Plaintiffs are seeking to recover money already paid to Public Storage based on Public Storage's alleged wrongdoing—this is restitution. *See Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So.2d 853, 856–57 (Fla.Dist.Ct.App.1972) ("However, from the evidence the plaintiff actually is seeking to protect his 'restitutionary interest', i.e., plaintiff seeks the return of monies paid to the defendant for benefits conferred upon the defendant."). "The purpose of restitution . . . is to require the wrongdoer to restore that which he has received and thus tend to put the injured party in as good a position as he occupied before the contract was made." *Id.* at 857. Under Florida law, restitution is available as a type of recovery where there has been a breach of an express contract, so long as the breach goes to a material provision of the contract. *Ocean Cmmc'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla.Dist.Ct.App.2007); *see Beefy Trail*, 267 So.2d at 857 ("The injured party, however, can not maintain an action for

restitution of what he has given the defendant unless the defendant's non-performance is so material that it is held to go the 'essence'; it must be such a breach as would discharge the injured party from any further contractual duty on his own part.").

The measure of damages under a theory of restitution allows Plaintiffs to return to their status prior to entering the contract, minus the value of any part performance rendered by Public Storage. *Ocean Cmmc'ns*, 956 So.2d at 1226 ("[I]f restitution is sought the plaintiff must return to the defendant any part performance of value rendered by defendant; such part performance must be allowed as a credit to the defendant as against the amount alleged owed to the plaintiff as restitution for the breach." (quoting *Beefy Trail*, 267 So.2d at 858)). Thus, for the same reasons discussed above regarding Plaintiffs' RICO claims, Plaintiffs must point to evidence from which the fact finder can ascertain the value of the PSTIP insurance. This Plaintiffs have failed to do.

There is no dispute that Plaintiffs received some value by purchasing PSTIP insurance. Plaintiffs' assertion that "Public Storage has admitted that tenants will still have paid enough in premiums [without the access fee] for an insurer to provide the same insurance they received, cover claims and expenses and still make an industry-standard profit," D.E. 253 at 17, does not mean that the **value** of the PSTIP is necessarily the insurance premiums less the access fee, and, in any event, Plaintiffs have not produced evidence of an "industry standard profit." Without any evidence, Plaintiffs' breach of contract claims fail.

The cases on which Plaintiffs rely again fail to support their position that they are entitled to a full refund of the access fee. In *Massachusetts Mutual Life Insurance v. Switlyk*, the plaintiff was an insurance company that had issued defendant a disability policy and a business overhead expense policy. *Mass. Mut. Life Ins. Co. v. Switlyk*, No. 8:13–cv–3243, 2014 WL 3894342, at *1 (M.D.Fla. Aug. 8, 2014). Plaintiff alleged contractual damages sufficient to survive a motion to dismiss under Rule 12(b)(6) by alleging that it paid excessive and unreasonable disability benefits due under the insurance policies based on misrepresentations that defendant made when applying for benefits. *Id.* at *3. Here, on summary judgment, Plaintiffs have provided no evidence that they paid excessive and unreasonable insurance premiums.

Plaintiffs' other cited case, *Bankers & Shippers Insurance Company of New York*, is a complicated action arising out of the construction of a warehouse. Plaintiffs cite it for the proposition that it allowed the recovery of an overcharge as a part of contractual damages. *See Bankers & Shippers Ins. Co. of N.Y. v. AIA Insulation Indus. Inc.*, 390 So.2d 734, 740 (Fla. Dist.Ct.App.1980) (listing "Contractor's overcharge on sprinkler system" as part of a parties' damages claim). Plaintiffs are, however, incorrect. The alleged "overcharge" in *Bankers* was the difference between the contractor's estimated cost to complete installation of the sprinkler system, which the owner had already paid, and the actual cost of installation, which was less than the estimated cost. *Id.* at 737. Here, unlike in *Bankers*, there is no similar measurable way to determine the difference between the value of the PSTIP and the cost paid by Plaintiffs. But, even with being able to measure the amount of the alleged overcharge, the court in *Bankers* did not actually allow the owner to recover any "overcharge" because it could find no evidentiary support that an overcharge had occurred. *Id.* at 737 ("After laboriously combing the twenty-four vol-

ume record we are unable to find adequate evidentiary support for the trial court's award of this item of damages.").

Because Plaintiffs have failed to produce evidence that would support their claim for damages if they prevailed on a breach of contract or breach of contract for breach of the duty of good faith and fair dealing, these claims must also be dismissed. *See ProfiTel Grp., LLC v. PolyOne Corp.,* 238 Fed.Appx. 444, 450–51 (11th Cir.2007). The Court therefore also finds that Plaintiffs' Florida subclass to the extent it seeks to pursue breach of contract claims should be decertified because Plaintiffs have failed to establish that their theory of liability, which requires demonstrating that class members suffered damages as a result of Public Storage's alleged breach, is subject to classwide proof and therefore satisfies the predominance requirement of Rule 23(b)(3).

### D. Unconscionability Claim

Public Storage argues that Plaintiffs cannot assert an unconscionability claim when seeking only money damages. Public Storage argues that Plaintiffs' Amended Complaint makes no demand for any injunctive relief, and therefore their unconscionability claim cannot stand. Public Storage also argues, in a separate section of its Motion, that Plaintiffs do not have standing to seek injunctive relief because Brian Morgan, the class representative, terminated his tenancy with Public Storage in May of 2013. He is therefore under no threat of real and immediate harm that would justify injunctive relief.

Plaintiffs argue in their opposition that they seek "[a]n order requiring the Defendant to make full disclosure to consumers of its retention of self-storage insurance premiums sold in its stores and the amount of the kickback it receives," and are therefore still seeking declaratory relief. D.E. 79 at 38. Plaintiffs also argue

that Colin Bowe still has standing to seek injunctive relief because he continues to rent from Public Storage.

■ As the parties are aware, the Court did not certify Plaintiffs' unconscionability claim for class treatment based on Morgan's inability to pursue injunctive relief. D.E. 305. Although Bowe has standing to pursue injunctive relief, the Court finds that Plaintiffs' claim for unconscionability is due to be dismissed because Plaintiffs do not seek injunctive relief that is commensurate with an unconscionability claim.

■ Unconscionability is an equitable theory whereby a party can avoid enforcement of a contractual provision based on its unconscionability. *See Basulto v. Hialeah Auto.,* 141 So.3d 1145, 1157 (Fla.2014) ("Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain an unjust and undeserved advantage which it would be inequitable to permit him to enforce." (internal quotations omitted)); *Bennett v. Behring Corp.,* 466 F.Supp. 689, 700 (S.D.Fla.1979) ("The Court finds that neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse enforcement of the unconscionable section or sections of the contract so as to avoid an unconscionable result."). Plaintiffs are not trying to avoid enforcement of the rental agreements or insurance addenda, and instead seek a broad order requiring specific performance from Public Storage. As the relief sought is inappropriate for an unconscionability claim, the Court finds that summary judgment should be granted for Public Storage on Plaintiffs' unconscionability claim.

### E. Unjust Enrichment Claim

█ Public Storage contends that Plaintiffs cannot pursue a claim for unjust enrichment while suing on express contracts, and, therefore, this claim must be dismissed. Plaintiffs argue that they have asserted this theory because Public Storage has argued that there is no contract provision covering these claims.

█ A plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter. *Atlantis Estate Acquisitions, Inc. v. DePierro*, 125 So.3d 889, 894 (Fla.Dist.Ct.App.2013). If the parties agree that an express contract exists that governs their dispute, then an unjust enrichment claim cannot proceed. *See Weaver v. Mateer & Harbert, P.A.*, 523 Fed.Appx. 565, 569 (11th Cir.2013) (finding "because there was no dispute that the parties entered into an express written contract, Weaver's claim against Mateer Harbert for unjust enrichment was unavailing as a matter of law"); *McIntyre v. Marriott Ownership Resorts, Inc.*, No. 13–80184, 2015 WL 162948, at *5 (S.D.Fla. Jan. 13, 2015) ("Although a plaintiff may generally plead claims in the alternative . . . an unjust-enrichment claim may not be pled in the alternative where all of the parties agree that an express contract governs the dispute.").

Despite contrary representations in their Joint Pretrial Stipulation, the parties appear to agree that the relationship between Public Storage and class members in regards to the PSTIP is governed by two contracts: the lease/rental agreement, and the insurance addenda. D.E. 196 ¶¶ 2, 6; D.E. 254 ¶ 2. Although the terms of these contracts, and whether Public Storage breached these terms, are disputed, the parties do agree that these contracts exist and govern their duties with respect to the PSTIP. Accordingly, Plaintiffs' claim for unjust enrichment cannot proceed as a matter of law. *See Wilson v. EverBank, N.A.*, 77 F.Supp.3d 1202, 1221, 2015 WL 265648, at *9 (S.D.Fla. Jan. 6, 2015) ("But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid." (internal quotations omitted)).

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Plaintiffs' Motion to Strike, D.E. 241, is GRANTED IN PART and DENIED IN PART. It is GRANTED as follows: Exhibits 6 and 11 to Capri Haga's Declaration, D.E. 201, are hereby STRICKEN, and Clemente Teng is STRICKEN as a witness. It is further

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment, D.E. 195, is GRANTED IN PART AND DENIED IN PART. It is GRANTED as follows: Plaintiffs cannot pursue Counts II, III, IV, V, VI, VII, and VIII of their Amended Complaint. It is otherwise DENIED. It is further

ORDERED AND ADJUDGED that the Court's Order, D.E. 305, is amended as follows: the nationwide class for resolution of Plaintiffs' RICO claims and the Florida subclass for resolution of Plaintiffs' breach of contract claims are decertified.

### ORDER ON MOTION FOR RECONSIDERATION

THIS CAUSE is before the Court upon Plaintiffs' Motion for Reconsideration of Order on Summary Judgment. D.E. 318. The Motion is fully briefed and ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record, and is otherwise fully advised in the

premises. For the following reasons, this Motion is DENIED.

### BACKGROUND

The facts giving rise to this action have been thoroughly discussed and detailed in the Court's Order on Plaintiffs' Motion for Class Certification, D.E. 305, and the Court's Omnibus Order, D.E. 313. Thus, the Court does not restate the facts in this Order.

On May 19, 2015, the Court granted summary judgment against Plaintiffs on Counts II through VIII of their Amended Complaint. D.E. 313. In the same order, the Court also decertified the nationwide class for resolution of Plaintiffs' RICO claims and decertified the Florida subclass for resolution of their breach of contract claims. *Id.* Following this Order, the only claim that remains in has been certified for resolution by a Florida subclass. D.E. 305 at 42.

The Court granted summary judgment on Plaintiffs' RICO and breach of contract claims because Plaintiffs failed to produce evidence that they suffered a RICO injury, and they failed to produce evidence that they suffered damages as the result of Public Storage's alleged breach of contract. D.E. 313. Specifically, Plaintiffs failed to produce any evidence that tenants' insurance premiums for the Public Storage Tenant Insurance Program ("PSTIP") were inflated based on the value of the PSTIP insurance. Plaintiffs' theory at class certification was that they could prove a classwide inference that Public Storage's alleged RICO violations proximately caused their injuries because class members were duped into paying inflated prices, or overcharges, for the PSTIP insurance. At summary judgment, however, the Court found that Plaintiffs had not come forward with any evidence that class members actually were overcharged because Plaintiffs did not produce any evidence as to the value of the PSTIP insurance.

On May 29, 2015, Plaintiffs filed the present Motion, arguing that the Court should reconsider its order granting summary judgment. D.E. 318.

### LEGAL STANDARD

Although Plaintiffs do not specifically state the rule under which they are moving for reconsideration, they rely on a case that sets forth the standard for a Federal Rule of Civil Procedure 59(e) motion for reconsideration. "A rule 59(e) motion for reconsideration of an order may only be granted on the grounds of newly discovered evidence or manifest errors of law or fact." *Porto Venezia Condominium Ass'n v. WB Ft. Lauderdale, LLC,* 926 F.Supp.2d 1330, 1332 (S.D.Fla.2013). There are three reasons to grant a motion for reconsideration under Rule 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.,* 320 F.Supp.2d 1347, 1357–58 (S.D.Fla. 2004).

A motion for reconsideration "is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory" nor is it meant to "give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Mincey v. Head,* 206 F.3d 1106, 1137 n. 69 (11th Cir.2000). "It is an extraordinary remedy to be employed sparingly" and requires the moving party to "present facts or law of a strongly convincing nature that would induce a court to reverse its prior decision." *Porto Venezia Condominium Ass'n,* 926 F.Supp.2d at 1332 (internal citations and quotations omitted).

## DISCUSSION

Plaintiffs contend that the Court should reconsider its order on Public Storage's motion for summary judgment to prevent manifest injustice for the following reasons: (1) the Court misunderstood that Plaintiffs were "damaged in the amount of the kickback they were duped into paying" and therefore their claims fall under the Court's second category of RICO injuries; and (2) Plaintiffs did produce evidence, specifically the Ernst & Young Transfer Pricing Reports and Capri Haga's deposition testimony, that the actual value of the PSTIP was the premium paid less the amount of the "access fee" kickback. D.E. 318. The Court addresses each argument in turn.

### A. Type of RICO Injury

██ In its order, the Court described three categories under which RICO injuries appear to fall. "The first is where the defendant promises plaintiff that certain services will be rendered, plaintiff pays for those services, but the services are not actually provided." D.E. 313 at 12. "The second is where a plaintiff enters into a contract with a defendant, and then the defendant, through a series of RICO violations, undermines the plaintiff's contractual interest such that the plaintiff loses money." *Id.* "The third and final category is where the defendant charges above fair market value for a service or good based on fraudulent misrepresentations or omissions." *Id.* On summary judgment, the Court found that Plaintiffs' RICO injury theory falls under the third category. Plaintiffs argue in their Motion for Reconsideration that their damages theory actually falls under the second category and that their claims are analogous to the plaintiffs' RICO claims in *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir.2013).

The defendant in *U.S. Foodservice* was U.S. Foodservice, Inc. ("USF"), the country's second largest food distributor, and the plaintiffs were its customers who had contracted with USF to purchase food on a "cost-plus" basis. 729 F.3d at 112. "Under this pricing model, the final cost to the customer is computed based on the 'cost' ... meaning the price at which USF purchases the goods from its supplier, and the 'plus,' or additional surcharge that USF charges on top of the cost, often expressed as a percentage increase over this cost." *Id.* The "cost" for the plaintiffs in this class action was calculated "based on the 'invoice cost,' which refers to the price on the invoice from the supplier to USF." *Id.*

Plaintiffs alleged that USF had engaged in a fraudulent practice to inflate the cost component of the cost-plus billing by founding shell companies called Value Added Service Providers ("VASPs"). *Id.* at 113. The scheme allegedly operated as follows:

> USF allegedly negotiated the purchase of goods from suppliers without input from the VASPs. USF then directed suppliers to bill goods to the VASPs, but often to deliver them directly to USF. The VASPs then generated a second invoice, ostensibly to "sell" the goods to USF, using a high price dictated by [USF executives]. USF purported to pay the VASPs and then used the higher VASP prices in setting the landed cost for its cost-plus pricing. USF customers unwittingly paid the inflated amounts and the VASPs then completed the scheme by kicking back the fraudulent mark-ups to USF disguised as legitimate promotional allowances.

*Id.* Plaintiffs argued that USF was liable for violating RICO statutes because it "devised a scheme to defraud its customers in which it mailed to customers phony invoices generated by the VASPs to inflate

prices above what the customers were contractually obligated to pay." *Id.* at 117–18. The Second Circuit agreed with the district court that the class members could establish RICO causation and damages on a class-wide basis. The court stated, "USF, having entered into contracts that entitled its customers to 'cost-plus' pricing, is alleged to have systematically deceived them into believing they were being afforded such pricing when, in fact, they were being overcharged." *Id.* at 123. "The measure of damages as compensation for *this* injury is straightforward: customers are entitled to the difference between the amount they paid on fraudulently inflated cost-plus invoices and the amount they should have been billed (or, stated differently, the price increase due to the use of VASPs)." *Id.*

Plaintiffs contend that their RICO injury is the same as the class members' injury in *U.S. Foodservice* because Public Storage contractually agreed that it would not insure Plaintiffs' property and would instead "pass the insurance premium to the independent insurer," but then "engaged in a scheme to route the PSTIP through an undisclosed entity" "which retained funds sufficient to cover claims, expenses and an industry-standard profit" and was "used to facilitate a fraudulent kickback to Public Storage in excess of what E & Y calculated was actually required to provide that insurance." D.E. 318 at 8.

Here, Plaintiffs did not have a similar contractually-protected interest that was undermined by Public Storage's alleged RICO violations so that Plaintiffs paid more than they were contractually obligated to pay. Contractually, Plaintiffs and Public Storage's other tenants agreed to pay a set premium for the PSTIP. Even without Public Storage's receipt of the access fee, Plaintiffs would have remained contractually obligated to pay the agreed insurance premiums. As noted in the Transfer Pricing Report upon which Plaintiffs so heavily rely, the insurance company, either Lexington Insurance Company or New Hampshire Insurance Company, "is responsible for the determination of the price of the premium charged to the tenants." D.E. 270–2 at 25. Public Storage "plays a role in setting prices because too high a price can impact the self-storage business." *Id.* Therefore, unlike in *U.S. Foodservice,* where the inflated invoices and VASPs were created by USF to purposefully overcharge the customers and increase USF's revenue contrary to what had been agreed upon in the customers' contracts, here Public Storage did not even set the insurance premium and could not therefore inflate the premium to overcharge customers more than they were obligated to pay in their insurance addenda.

Plaintiffs theory of their RICO injury is not the same as the plaintiffs in *U.S. Foodservice* because Plaintiffs were not forced to pay more than they were contractually obligated to pay as a result of Public Storage's RICO violations. Plaintiffs theory must instead be that the PSTIP premiums were initially set at an inflated amount to include the access fee, and this requires showing that the amount paid for the PSTIP was excessive based on the value of the PSTIP. Thus, the Court did not misconstrue Plaintiffs' RICO damages theory; Plaintiffs are instead attempting to make a square peg fit in a round hole by analogizing their claim to that in *In re U.S. Foodservice.*

### B. Evidence of the PSTIP's Value

Plaintiffs àlso move for reconsideration because, they contend, the Court failed to consider Plaintiffs' damages evidence, specifically the Ernst & Young Transfer Pricing Reports and Capri Haga's deposition testimony. Plaintiffs argue that this evi-

dence establishes a genuine issue of material fact that they suffered a RICO injury. Specifically, Plaintiffs contend that the Transfer Pricing Reports calculate the value of the PSTIP by determining the portion of the insurance premiums that Public Storage Insurance Company of Hawaii ("PS—Hawaii") should receive "as compensation for providing the PSTIP (which included general and administrative expenses, loss reserves for claims, and an industry standard profit, arrived at after reviewing the profitability of dozens of other insurers engaged in this type of underwriting)." D.E. 318 at 10. Plaintiffs also cite to testimony from Capri Haga, Public Storage's corporate representative, where she stated that the transfer pricing reports, which she had not reviewed, calculated " 'whatever is in excess' of 'what would be an acceptable profit margin for an insurance company administering the [PSTIP] program' after expenses." *Id.* at 12.

As a preliminary matter, the Court takes issue with Plaintiffs' contention that it did not consider evidence submitted in opposition to Public Storage's motion for summary judgment. The Court carefully considered the Transfer Pricing Reports and Ms. Haga's deposition testimony, but, for the reasons the Court will thoroughly explain to Plaintiffs below, this evidence does not allow Plaintiffs' RICO claims to survive summary judgment because it does not support a reasonable inference that Plaintiffs actually suffered a RICO injury.

 "In considering a motion for summary judgment, this evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir.1985). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Id.* (internal citations omitted). "Nor may the Court draw 'inference upon inference' to create a jury issue for the plaintiff." *Miles v. Jones,* 2010 WL 5574324, at *7 (S.D.Fla. Nov. 22, 2010) (quoting *Gregg v. Ohio Dep't of Youth Servs.,* 661 F.Supp.2d 842, 859 (S.D.Ohio 2009)). Plaintiffs' proposed inference that the transfer pricing reports show that Plaintiffs suffered a RICO injury because they purportedly demonstrate that the access fee consisted of pure profit, is unreasonable because it is based on conjecture and speculation.

Every fiscal year, Ernst & Young compiled Transfer Pricing Reports for Public Storage. *See* D.E. 270–2; D.E. 270–12. The Reports analyzed specific intercompany transactions between Public Storage and its related entities, including PS—Hawaii, to determine whether Public Storage's transfer pricing practices satisfied the Internal Revenue Code's § 482 regulations, which govern the allocation of income and deductions among related taxpayers. D.E. 270–2 at 14; 26 U.S.C. § 482. One of the intercompany transactions analyzed in the report concerns the PSTIP and the entities involved, and determined how much money PS—Hawaii should pay Public Storage for "right to access tenants and provide insurance." D.E. 270–2 at 25.

As previously noted, Ernst & Young's analysis begins with the fact that the insurance premiums for the PSTIP are set by the insurance company, which is named Lexington Insurance Company in the report although New Hampshire Insurance Company is named as the insurance company in Plaintiffs' Complaint. *Id.* at 25. According to the report, PS—Hawaii reinsures the PSTIP policies up to the first $1 million of risk; the risk in excess of $1 million is insured by Lexington Insurance. *Id.* PS—Hawaii "determines the fee to be

paid to [the insurance company] for the services performed." *Id.* Ernst & Young then used the "profit split method" to determine the amount of residual profit that should be transferred back to Public Storage "[a]s the owner of the valuable customer intangible." *Id.* at 37. In applying the profit split method, Ernst & Young reached the following conclusion:

> Based on the functional analysis, [PS—Hawaii] was determined to be party with primarily measurable functions and factors, which should therefore be rewarded with normal returns. As the owner of the valuable customer intangible, Public Storage is entitled to receive the residual profit or loss.

*Id.*

Ernst & Young determined that PS—Hawaii was entitled to $9,407,658, as a sum of the following: losses incurred on the tenant insurance; third party expenses (with no mark-up); internal costs (with median mark-up based on summarizing the mark-up on total cost of similar companies); and a return to PS—Hawaii for putting its capital at risk. *Id.* at 38. Therefore, Public Storage was found to be entitled to collect a residual profit from the PSTIP premiums of $55,848,684. *Id.* Capri Haga, the President of PS—Hawaii as well as the Senior Vice President of Risk Management for Public Storage, testified that although she had not reviewed the transfer pricing reports she understood that the report evaluated the PSTIP, determined "an acceptable profit margin for an insurance company administering that program" and then concluded that "whatever is in excess of that, is the access fee that is then paid back" to Public Storage. D.E. 253–5 at 5, 102:4–12.

Based on this, Plaintiffs contend that "the Transfer Pricing Reports assigned a value to the PSTIP to be used in its calculation—the amount PSIC could reasonably charge were it an independent insurer."

D.E. 318 at 11. This conclusion is, however, purely speculation and conjecture and is not based on the evidence. The report determines how PS—Hawaii and Public Storage should split the profit from the PSTIP based on the internal revenue code after the insurance company sets the premium with input from Public Storage to keep the premium low. It did not calculate what customers would be charged if PS—Hawaii separately offered tenant insurance; it did not calculate the "value" of the PSTIP program, instead assuming that the value of the program had already been set by the insurance company in conjunction with Public Storage; and, finally, it was not used to inflate the cost of the PSTIP premium to allow Public Storage to collect the access fee. To agree with Plaintiffs and allow this issue to go to a jury would require the Court to impermissibly stack unreasonable inference on top of unreasonable inference. First, the Court would have to agree that by calculating how PS—Hawaii and Public Storage should divide proceeds from the PSTIP, Ernst & Young assigned a value to the PSTIP. Then, the Court would have to agree that Public Storage should not receive any amount of the proceeds from the PSTIP despite providing access to its customers, selling the PSTIP to its customers, and performing some administrative functions. The Court cannot draw these inferences from either the Transfer Pricing Report or Haga's testimony.

This is not a case, contrary to Plaintiffs' contention, where the measure of damages is unknown, but there is evidence that Plaintiffs suffered a RICO injury. Plaintiffs have not produced any evidence showing they actually suffered an out-of-pocket loss because there is no evidence that Plaintiffs paid more than they were contractually obligated to pay, like the plaintiffs in *U.S. Foodservice,* and there is no evidence that Plaintiffs were overcharged

for the PSTIP by inclusion of the alleged kickback, which were the allegations in the other cases upon which Plaintiffs rely, *see Cannon v. Wells Fargo Bank, N.A.*, No. C–12–1376, 2014 WL 324556, at *3 (N.D.Cal. Jan. 29, 2014), *Rothstein v. GMAC Mortg., LLC*, No. 12 Civ. 3412, 2013 WL 5437648, at *18 (S.D.N.Y. Sept. 30, 2013), *Welch Foods, Inc. v. Moran*, No. 93–CV–0729E(F), 1996 WL 107130, at *9 (W.D.N.Y. Mar. 8, 1996). Because there is no evidence that Plaintiffs have suffered a RICO injury, which is a required element of a RICO claim, their RICO claims were properly dismissed and the Court finds no reason to reconsider its previous Order.

### C. Evidence of Contractual Damages

Plaintiffs also argue that the Transfer Pricing Reports demonstrate that the access fee constituted an overcharge and therefore raise a material issue of genuine fact as to whether Plaintiffs suffered contractual damages. For the same reasons as explained above, the Transfer Pricing Reports do not support a reasonable inference that the PSTIP premiums consisted of overcharges. Accordingly, the Court will not reconsider its dismissal of Plaintiffs' breach of contract claims.

Plaintiffs also argue in their Motion, for the first time ever in this action, that they may be able to recover nominal damages if they prove that Public Storage breached its contracts with Plaintiffs. Plaintiffs never argued or alleged that they would be entitled to nominal damages if Public Storage was found to have breached its contracts with Plaintiffs. Accordingly, these arguments are waived, and Plaintiffs appear to recognize as much by not pursuing this argument in their Reply. *See Campero USA Corp. v. ADS Foodserv., LLC*, 916 F.Supp.2d 1284, 1292 (S.D.Fla.2012) ("[A]ny arguments the movant failed to raise in the earlier motion will be deemed waived.").

*CONCLUSION*

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Plaintiffs' Motion, D.E. 318, is DENIED.

DONE AND ORDERED in Miami, Florida, this 24th day of June, 2015.